## COMMISSIONER OF INTERNAL REVENUE v. GIANNINI.

### No. 9931.

Circuit Court of Appeals, Ninth Circuit.

July 8, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and F. E. Youngman, Sp. Assts. to Atty. Gen., for petitioner.

Andrew F. Burke and George H. Koster, both of San Francisco, Cal., and Harry Friedman, of Washington, D. C., for respondent.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Petition by the Commissioner of Internal Revenue for a review of a decision of the Board of Tax Appeals which is reported at 42 B.T.A. 546 to the effect that there is no deficiency in taxpayer's federal income tax for the year 1928.

The facts upon which the Commissioner relies in claiming a deficiency are as follows:

The taxpayer and his wife at all relevant times were husband and wife and were residents of California. The taxpayer was a Director and President of Bancitaly Corporation from 1919 until its dissolution after the tax year in question. From 1919 to 1925 he performed the services of these offices without compensation, and on January 22, 1925, the Board of Directors authorized a committee of three to devise a plan to compensate him, he in the meantime to have the privilege of drawing upon the corporation for his current expenditures.

On April 19th, 1927, the committee reported and on June 27th, 1927, the Directors unanimously approved the report. It was: "The committee as above met on Wednesday, April 13, 1927, at 2:00 o'clock, in Mr. Fagan's office, in the Crocker First National Bank, San Francisco, and unanimously agreed to, and hereby do, recommend to the directors of the Bancitaly Corporation that Mr. A. P. Giannini, for his services as President of your Corporation, be given 5% of the net profits each year, with a guaranteed minimum of $100,000 per year, commencing January 1, 1927, in lieu of salary."

On November 20, 1927, the withdrawal account of taxpayer showed an indebtedness to the corporation of $215,603.76, and on that date his account was credited and the salary account on the books of the corporation was debited with the amount of $445,704.20, being the equivalent of 5% of the corporation net profits from January 1, 1927, to July 22, 1927.

In 1927 after the taxpayer learned the amount of the profits from January to July of that year and that he would receive $445,704.20 as his 5% thereof, the taxpayer informed members of the Board of Directors of the corporation that he would not accept any further compensation for the year 1927, and suggested that the corporation do something worth while with the money. The finding of the Board in this respect is that the refusal was "definite" and "absolute", and there is ample evidence in the record to support such finding.

The corporation never credited to the taxpayer or his wife any portion of the 5% of the net profits for the year 1927, other than the $445,704.20 above referred to, nor did it set any part of the same aside for the use of the taxpayer or his wife. The only action of the corporation in this respect is as follows:

On January 20, 1928, the Board of Directors of Bancitaly Corporation adopted a resolution reading in part as follows:

"Whereas, this Corporation is prepared now to pay to Mr. A. P. Giannini for his services as its President and General Manager five per cent (5%) of the net profits of this Corporation computed from July 23, 1927 to the close of business January 20, 1928, which five percent (5%) amounts to the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00); and

"Whereas, Mr. A. P. Giannini refuses to accept any part of said sum but has indicated that if the Corporation is so minded he would find keen satisfaction in seeing it devote such a sum or any lesser adequate sum to the objects below enumerated or kindred purposes; and

"Whereas, we believe that this Corporation would do a great good and derive a great benefit from the establishment of a Foundation of Agricultural Economics at the University of California, and we believe that something should be done by this Corporation to evidence its appreciation of the fact that without the general confidence and hearty cooperation of the people of the State of California the great success of this Corporation would not have been possible * * *;

* * * * *

"Now, Therefore, Be it Resolved, by the Board of Directors of this Corporation, that the aforesaid sum of One Million Five Hundred Thousand Dollars ($1,500,000.00) be set apart from the undivided profits of this Corporation in a Special Reserve Account for the purpose hereinafter described, and the whole of said sum be donated to the Regents of the University of California for the purpose of establishing a Foundation of Agricultural Economics; and

"Be it Further Resolved, that said donation be made in honor of Mr. A. P. Giannini, and that said Foundation shall be named after him; and

"Be it Further Resolved, that a Committee consisting of James A. Bacigalupi, P. C. Hale and A. Pedrini be appointed to confer with the President of the University of California, for the purpose of discussing and determining upon the general scope of said Foundation, and with full power of settling all details in connection therewith; * * *".

In accordance with said resolution the Corporation in February, 1928, submitted a written offer of contribution to the Regents of the University of California, and the offer was accepted. One deviation occurred in carrying out the plan, however, in that 5% of the profits of the Bancitaly Corporation for the period January 1, 1927, to January 20, 1928, less the sum of $445,704.20 credited to taxpayer amounted to $1,357,607.40 instead of the estimated $1,500,000.00, and the difference of $142,-392.60 was paid by the taxpayer personally. There is no question in this appeal concerning this $142,392.60.

The taxpayer and his wife in reporting their income for taxation purposes in 1928 did not report any portion of the $1,357,607.40 paid to the Regents of the University of California by the Bancitaly Corporation as aforesaid, and it is the Commissioner's contention that one-half of said sum should be reported by each. Based upon this theory the Commissioner assessed a deficiency of $137,343.50 in the case of the taxpayer in this appeal and a deficiency of $123,402.71 in the case of his wife. Separate appeals have been taken by each party, but it is stipulated by the parties

that the decision in the wife's case is to abide the final decision in the case now before this court.

The Commissioner's argument in support of the claimed deficiency may be summarized as follows: That actual receipt of money or property is not always necessary to constitute taxable income; that it is the "realization" of taxable income rather than actual receipt which gives rise to the tax; that a taxpayer "realizes" income when he directs the disposition thereof in a manner so that it reaches the object of his bounty; that in the instant case the taxpayer had a right to claim and receive the whole 5% of the corporation profit as compensation for his services; and that his waiver of that right with the suggestion that it be applied to some useful purpose was such a disposition thereof as to render the taxpayer taxable for income "realized" in the tax year in which the suggestion is carried out. In connection with this latter argument the Commissioner states in his opening brief that "For the purposes of income tax it would seem immaterial whether the taxpayer waived his compensation, thus in effect giving it to Bancitaly Corporation, with the suggestion that it be applied to some useful purpose, or whether he failed to waive the right to receive the compensation and directed that it be paid to a donee of his choice." Again it is stated by the Commissioner, "Insofar as the question of taxation is concerned it would not seem to make much difference whether he directed Bancitaly Corporation to pay his compensation to the University of California or whether he merely told his employer to keep it."

Supplemental to the argument as above summarized, the Commissioner urges that the Board's finding that the money paid to the Foundation of Agricultural Economics as above set forth "was the property of Bancitaly and the petitioner [taxpayer] had no right, title or interest therein" is unsupported by the evidence; and that in any event such finding is an "ultimate finding" and therefore reviewable by this court under the rule announced in Commissioner v. Boeing, 9 Cir., 106 F. 2d 305 and cases therein cited. We agree that the question of the effect of the taxpayer's unqualified refusal to take the compensation for his services is a question of law subject to review by this court. That question is the sole question presented by this appeal.

The taxpayer, on the other hand, urges that "A person has the right to refuse property proffered to him, and if he does so, absolutely and unconditionally, his refusal amounts to a renunciation of the proffered property, which, legally, is an abandonment of right to the property without a transfer of such right to another. Property which is renounced (i. e. abandoned) cannot be 'diverted' or 'assigned' by the renouncer, and cannot be taxed upon the theory that it was received."

The Commissioner takes issue with the argument of the taxpayer as above quoted by arguing that the amount involved was more than "property proffered to" the taxpayer, but was instead compensation which the taxpayer had a contractual right to receive. The point is that any disposition of this contractual right, whether it be by waiver, transfer, assignment or any other means, and whether it be before or after the rendition of the services involved, results in taxable income under the rules announced in the cases of Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; and Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055.

The Earl case arises out of an assignment of salary and attorneys fees by a husband to his wife in advance of the rendition of the services. It was claimed that the husband never beneficially received them, but the Court refused to follow this reasoning and held that "the tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it". The gist of the decision appears to be that the salary was accepted, and the employee's dominance over it amounted to his receipt of it.

In the Horst case the taxpayer gave away interest bearing coupons, and the donee collected the interest during the taxpayer's taxable year. A conflict was asserted between the Circuit Court decision and the case of Lucas v. Earl, supra. In commenting upon the rule that income is not taxable until "realized", the Court [311 U. S. 122, 61 S.Ct. 147, 85 L.Ed. 75, 131 A.L. R. 655] asserted that such rule is a rule of postponement of the tax to the final event of enjoyment, saying "income is 'realized' by the assignor * * * who

owns or controls the source * * * controls the disposition * * * and diverts. * * * The donor [taxpayer] here, * * * has * * * by his act, procured payment of the interest, as a valuable gift * * *. Such a use * * * would seem to be the enjoyment of the income * * *."

In the Eubank case a life insurance agent, after terminating agency contracts, made assignments of renewal commissions payable to him for services rendered in procuring policies. The Court held the renewal commissions taxable to the assignor. Here again the dominance over the fund by the assignor was shown.

In the Schaffner case the life beneficiary of a trust assigned to children income from the trust for the year following the assignment. In holding that the income was taxable to the assignor the Court analyzes and compares these three cited cases. The Court said [312 U.S. 579, 61 S.Ct. 760, 85 L.Ed. 1055],

"Since granting certiorari we have held, following the reasoning of Lucas v. Earl, supra, that one who is entitled to receive at a future date, interest or compensation for services and who makes a gift of it by an anticipatory assignment, realizes taxable income quite as much as if he had collected the income and paid it over to the object of his bounty. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A. L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81."

Here again the dominance over the fund and taxpayer's direction show that he beneficially received the money by exercising his right to divert it to a use.

Now, turning again to the instant case. The findings of the Board, supported by the evidence, are to the effect that the taxpayer did not receive the money, and that he did not direct its disposition. All that he did was to unqualifiedly refuse to accept any further compensation for his services with the suggestion that the money be used for some worth while purpose. So far as the taxpayer was concerned, the corporation could have kept the money. All arrangements with the University of California regarding the donation to the Foundation were made by the corporation, the taxpayer participating therein only as an officer of the corporation.

In this circumstance we cannot say as a matter of law that the money was beneficially received by the taxpayer and therefore subject to the income tax provisions of the statute. It should be kept in mind that there is no charge of fraud in this case. It would be impossible to support the Commissioner in his contention that the money was received by the taxpayer without arriving at the conclusion that the taxpayer was acting in less than full and open frankness.[1] The Board rejects this suggestion and we see no occasion for drawing inferences from the evidence contrary to the plain intent of the testimony which is not disputed. To support the Commissioner's argument we should have to hold that only one reasonable inference could be drawn from the evidence, which is that the donation is but a donation of the taxpayer masquerading as a creature of the corporation to save the true donors [taxpayer and his wife] some tax money. The circumstances do not support this contention. In our opinion the inferences drawn by the Board are more reasonable and comport with that presumption of verity that every act of a citizen of good repute should be able to claim and receive.

Affirmed.

HEALY, Circuit Judge (concurring).

The Board found that "in 1927 and prior to December 31 thereof" the taxpayer unconditionally renounced his right to compensation for the last half of that year; that the money renounced was the absolute property of Bancitaly to be used as it saw fit; and that Bancitaly donated the money to the University. While, for the most part, the circumstances and inferences to be drawn from the record point realistically in the direction of the taxpayer's exercise

---

[1] We say that the Commissioner's argument compels this conclusion for the reason that the claimed deficiency is for the tax year in which the donation was actually made to the Foundation. It should be recalled that the taxpayer's unqualified refusal to take any further compensation for his services in 1927 was made prior to December 31, 1927. If the Commissioner were earnestly taking the position that a waiver of compensation, with nothing more, is such an exercise of dominion over the moneys to be received as to render it taxable, it seems apparent that the deficiency if any would be in the year of the waiver, rather than some subsequent year in which the corporation disposes of the fund in some other manner.

of command over the money, it was for the Board to draw the inferences and to determine the credibility of the witnesses. We are bound to accept the Board's findings if, as is the case here, there is evidence to support them.

The Commissioner argues that so far as concerns the question of taxation it is immaterial whether the taxpayer "directed Bancitaly Corporation to pay his compensation to the University of California or whether he merely told his employer to keep it. The amount involved was his income before he could make any disposition of it." If this view were accepted it would be applicable only to compensation "accruing" under the contingent contract up to the date of the disclaimer, which was found to be prior to December 31, 1927. It is clear that subsequent to the renunciation the taxpayer donated his services for the balance of the year to the bank. Whatever the taxpayer relinquished to the bank was relinquished in 1927, and whatever the bank received in the way of a gift was received in that year. Considering the bank as the donee of income earned prior to the renunciation of the contract, it seems inescapable that a tax predicated upon the constructive receipt of such income by the taxpayer would fall in 1927 rather than in 1928; and the latter is the only tax year before us.