## POTTER v. FAHS.

### Civ. No. 1052.

District Court, S. D. Florida.
Jacksonville Division.
May 1, 1947.

Alfred A. Green, of Daytona Beach, Fla., for plaintiff.

Edith House, Asst. U. S. Atty., of Jacksonville, Fla., H. S. Phillips, U. S. Atty., of Tampa, Fla., Sewall Key, Acting Asst. Atty. Gen., and Andrew D. Sharpe and F. A. Michels, Sp. Assts. to Atty. Gen., for defendant.

DE VANE, District Judge.

This is a suit by plaintiff to recover $35,955.59, plus interest paid to defendant on October 17, 1945 as additional income tax for the year 1943, assessed against her by the Commissioner of Internal Revenue. This additional income tax, assessed by the Commissioner, was based upon his claim that in 1943 plaintiff received from the estate of her deceased husband, Elmore Livingston Potter, payment of $45,368.46 of interest accrued upon two notes of her husband. On November 30, 1945 plaintiff filed with the Commissioner of Internal Revenue,

through defendant, his agent for that purpose, a written claim for refund of said amount of $35,955.59, plus interest. Said claim was not acted upon by the Commissioner within six months after the claim was filed and this suit followed.

The facts in the case are not in dispute. They were largely stipulated and such facts as defendant declined to stipulate and plaintiff was required to prove defendant offered no testimony in conflict with the testimony submitted by plaintiff.

Plaintiff's husband, Elmore Livingston Potter, died testate, on June 24, 1939. His will and codicil thereto were duly probated in the County Judge's Court of Volusia County, Florida and letters testamentary thereon issued July 5, 1939 to plaintiff and the First Atlantic National Bank of Daytona Beach, as executors thereof. The Potter will and codicil specifically bequeathed to plaintiff 4,000 shares of stock in the U. S. Grant Hotel and Office Building Company, which owned and operated the U. S. Grant Hotel at San Diego, California. The will and codicil also gave to plaintiff all wearing apparel, jewelry, personal effects and all other personal property of similar kind owned by the deceased at the time of his death. The codicil gave Kenneth Heath $5,000 if he be in the employ of the deceased at the time of his death. All the residue of the estate was given plaintiff and the First Atlantic National Bank of Daytona Beach, in trust, for the sole use of plaintiff and Helen Potter DeLaney, a daughter; three-fourths of the income to go to plaintiff and one-fourth to the daughter, each for life, with conditions in the event of the death of either.

Among the claims filed against the estate of Elmore Livingston Potter was one by plaintiff for two unsealed promissory notes of decedent to plaintiff dated January 1, 1930, payable on demand after date, with interest at 5% per annum from date, in the principal sums of $35,000 and $30,000 respectively, together with interest thereon to June 24, 1939, the date of Potter's death. Testator had made no payment of either principal or interest on the notes and the notes, with $34,070.80 of interest accrued thereon to June 24, 1939, were allowed by the Probate Court. No

claim for interest accruing on these notes subsequent to the death of the testator was ever filed by plaintiff and no part of the indebtedness due plaintiff on account of principal or interest was ever paid to plaintiff.

By written "release, relinquishment and waiver", dated February 1, 1944, plaintiff released the Executors of the Potter Estate and the Estate "of, from, for and on account of any and all interest accrued or to accrue upon each, severally, of the promissory notes of Elmore Livingston Potter" to plaintiff and by order dated July 9, 1945 this "release, relinquishment and waiver" was approved by the County Judge's Court of Volusia County, Florida, and plaintiff was barred and deprived of her right to collect and receive the interest.

On November 17, 1942 the executors of the Potter will assigned to plaintiff two stock certificates for the 4,000 shares of U. S. Grant Hotel and Office Building stock, specifically bequeathed to her. These certificates were sent to the U. S. Grant Office Building Company in California by the First Atlantic National Bank of Daytona Beach, with instructions to issue one certificate for 4,000 shares to plaintiff and the corporation, on November 24, 1942, issued its stock certificate No. 151 for the 4,000 shares of stock to plaintiff and mailed the certificate to the First Atlantic National Bank of Daytona Beach for delivery to plaintiff. This new certificate was delivered by the Bank to plaintiff on January 7, 1943.

The President of the First Atlantic National Bank of Daytona Beach, co-executor under the Potter will, testified that when these two capital stock certificates were assigned to plaintiff no demand had ever been made by plaintiff for the payment to her of the principal or any interest upon the two notes of her deceased husband held by her; that such assignment was intended only to give plaintiff possession of the stock certificates as a legatee and was not intended to liquidate or pay the principal or interest on the Potter notes. He further testified that plaintiff made no claim for the principal or interest of these notes and that the same were paid out of the Potter estate.

On October 24, 1946 plaintiff and the First Atlantic National Bank of Daytona Beach, as testamentary trustees, received from the estate under the residuary legacy the sum of $57,269.13, which was on hand at the end of the final report of the executors. The executors of the estate were discharged by order of the Probate Court, October 26, 1946.

In 1945, a Commissioner of Internal Revenue, determined that the $34,070.80 of interest accrued on the Potter notes from the date thereof to the date of Potter's death on June 24, 1939, plus interest thereon from Potter's death to January 7, 1943, in the sum of $11,498.16, totalling the sum of $45,568.96, to be "interest received from the estate of Elmore Livingston Potter in the year 1943", by plaintiff and computed and determined that plaintiff owed thereon $32,998.85 additional income tax for the year ending December 31, 1943, plus interest in the sum of $2,966.74. The Commissioner held that when plaintiff, as an unsatisfied creditor of the estate, accepted, on January 7, 1943, the 4,000 shares of stock given her by the Potter will that she evidenced an intention to use her right as creditor to safeguard her legacy and enhance her right as beneficiary of the estate and this act on her part constituted a beneficial receipt of income. It was upon this interpretation of the tax laws that the assessment was made against plaintiff. The court is advised by counsel for the respective parties that the precise question presented by this case has not heretofore been adjudicated by any Federal Court.

Counsel for plaintiff relies primarily upon Commissioner v. Mott, 6 Cir., 85 F.2d 315, 106 A.L.R. 537; Lewis v. O'Malley, 8 Cir., 140 F.2d 735; Commissioner v. Giannini, 9 Cir., 129 F.2d 638; Kellogg v. Commissioner, 2 T.C. 1126 and Wood v. Commissioner, 22 B.T.A. 535.

Other cases are cited by counsel for plaintiff, but the cases referred to above adequately state the law upon which plaintiff relies to recover the tax which she claims she was illegally forced to pay. These cases support the contention of plaintiff that a taxpayer cannot be taxed upon income or interest which the tax-payer refuses to accept. However, in not one of the cases did the taxpayer in question gain any advantage by his declination. In the case at bar plaintiff not only lost nothing by her refusal to accept the interest due her, but if she is not liable for the tax assessed against her, she enjoyed a substantial gain in assets by declining to collect her debt against the estate and accepting in lieu thereof the specific and residuary legacies left her under the Potter will.

Counsel for defendant, while citing numerous cases, relies chiefly upon Helvering v. Horst, 311 U.S. 112, 115, 61 S.Ct. 144, 146, 85 L.Ed. 75, 131 A.L.R. 655. In this case the Supreme Court said: "In the ordinary case the taxpayer who acquires the right to receive income is taxed when he receives it, regardless of the time when his right to receive payment accrued. But the rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received payment of it from his obligor. The rule, founded on administrative convenience, is only one of postponement of the tax to the final event of enjoyment of the income, usually the receipt of it by the taxpayer, and not one of exemption from taxation where the enjoyment is consummated by some event other than the taxpayer's personal receipt of money or property. Cf. Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 98, 51 S.Ct. 11, 13, 75 L.Ed. 234. This may occur when he has made such use or disposition of his power to receive or control the income as to procure in its place other satisfactions which are of economic worth."

While this statement of the law was made by the Supreme Court in a case where the facts differ from the facts in this case, the statement of the taxpayer's liability, under Section 22 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22, controls plaintiff's tax liability in this case, as effectively as it did in the Horst case.

[2] The undisputed facts in this case show that plaintiff used her power to relinquish the income due her by the Potter estate so as to procure in its place "other satisfactions which are of economic worth" to her. She was the chief beneficiary under the will and she could not take anything from the estate in satisfaction of the debt due her by the estate without suffering a loss as beneficiary.

The record in this case discloses a legal consequence of plaintiff's acts similar in many respects to those considered by the Circuit Court of Appeals for the Fifth Circuit in Jeffries v. Commissioner, 158 F.2d 225. The record discloses that the Potter notes held by plaintiff were barred by the statute of limitations, but the statute of limitations being a defense and there being no one to assert it and the debt being an honest one and due plaintiff, it was approved and allowed by the Probate Court. When she made proof of this indebtedness, plus interest, she put herself in a preferred position as a creditor over the rights of all legatees. The record does not disclose why she desired to and did place herself in such position. Nevertheless she did so voluntarily and having done so she lost her right to relinquish the income due her so as to "procure in its place other satisfactions" which were of economic worth to her. Helvering v. Horst, supra [311 U.S. 115, 61 S.Ct. 147].

Having placed herself in the position of a creditor, with preference over the position of all legatees she lost her right to waive the interest on the notes in so far as her tax liability was concerned. This state of facts did not exist in any of the cases relied upon by counsel for plaintiff, and reluctant as this court is to do so, the court holds that plaintiff, upon securing from the Probate Court the approval and allowance of the indebtedness due her by her deceased husband, she thereby created a tax liability for any interest due upon said indebtedness which she could not subsequently defeat by waiving her claim for same.

▮ Plaintiff contends that should the court hold that she is liable for the tax on the interest upon the two notes she is liable only upon the $34,070.80 of interest that accrued to the date of her husband's death on June 24, 1939, and that the Commissioner erred in adding $11,498.16 of interest accrued from that date until January 7, 1943, the date when she accepted her specific legacy under the will.

Florida law is to the contrary. Section 733.18, Statutes of Florida 1941, F.S.A., provides that: "Interest shall be allowed and paid by the personal representative upon written obligations of the deceased expressly providing for the payment of interest * * *". When plaintiff proved her debt against the estate she not only made the estate liable for the interest proved against the estate to the date of the death of her husband, but under this Section she made the estate liable for interest accruing thereafter until the debt was discharged. In this connection it should be noted that plaintiff did not acquit the estate of the interest until February 1, 1944 and the Commissioner, in accepting January 7, 1943 instead of the latter date as the date when interest was beneficially received by her, he favored the taxpayer to that extent. Having accepted the earlier date as the proper date for the assessment of the tax the Commissioner is here bound by his action in so doing.

A final judgment will be entered in conformity with this memorandum decision.