POTTER v. FAHS, Collector of Internal Revenue.

No. 12158.

Circuit Court of Appeals, Fifth Circuit.

April 20, 1948.

Rehearing Denied May 19, 1948.

Alfred A. Green, of Daytona Beach, Fla., R. S. Doyle, J. Gilmer Korner, Jr., and Stanley Worth, all of Washington, D. C. for appellant.

Louise Foster and Sewall Key, Sp. Assts. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., Herbert S. Phillips, U. S. Atty., of

Tampa, Fla., and Edith House, Asst. U. S. Atty., of Jacksonville, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Plaintiff's husband, Elmore Livingston Potter, a resident of Daytona Beach, in Volusia County, Florida, died testate on June 24, 1939. His will and codicil were duly probated in the County Judge's Court in the county of his residence and letters testamentary were issued to his widow, Jessie B. Potter, appellant here, and to the Atlantic National Bank of Daytona Beach, Florida, as co-executors of the will.

The widow filed a claim against the estate of the testator for the amount of the two promissory notes executed by her husband to her on January 1, 1930. These notes bore 5% interest and were payable on demand. They were not under seal and the applicable Florida statute of limitations was five years. This five-year period expired on January 1, 1935, or four years before testator's death. There were no renewals and no payments of either principal or interest ever made. No defense of the statute of limitations was interposed, and the claim was allowed by the Probate Court in the sum of the two notes, plus the interest that had accrued from date until the death of the maker, amounting to $34,070.80. No claim was ever filed for interest accruing after the death of the testator. However, the Commissioner of Internal Revenue determined that interest from the date of the notes until the end of the tax year of 1943, in the sum of $45,568.96, was taxable to Appellant.

On February 28, 1944, appellant notified the executors —of whom she was one—that she preferred not to require the payment to her of the interest on her husband's notes and that she would not accept payment thereof, and, to evidence this purpose, filed with the executors a formal release of the interest. This release was subsequently ratified and approved by an order of the Probate Court in which its order of August 29, 1940, approving the widow's claim for such interest, was modified and changed so as to debar and deprive the widow of all right to receive or to accept payment thereof.

The will of the taxpayer's husband contained a specific bequest to the taxpayer of 4000 shares of stock in a certain hotel and office building in California, and a specific bequest of $5,000 to Kenneth Heath, an employee. The residuum of the estate was devised to Appellant and the Atlantic National Bank of Daytona Beach, as trustees, for the use of the Appellant and Helen Potter Delaney, a daughter of testator. That is, three-fourths of the income from the residuum—the corpus of the trust estate—was to go to the widow and one-fourth to the daughter.

Prior to the winding up of the estate the executors delivered to the widow a certificate for the 4000 shares of the hotel stock bequeathed to her. After her express waiver of the right to collect interest and the waiver that may be implied of her right to be paid the principal of the notes, there remained the sum of $57,269.13 as the residuum of the estate, which was turned over by the executors to themselves as trustees under the will. Whereupon the executors were discharged. Since this is an income tax case we are not here concerned with the fact that the principal of the notes was not paid, because the principal was not income. A waiver of the right to collect the principal would be without income tax consequences. Interest, if received—directly or indirectly—, would be income and taxable as such.

The Commissioner was of the view that although the widow had waived the interest and released the estate from liability, nevertheless she had realized taxable income through the receipt of the hotel stock, free and clear of any liability to pay the interest; that in this fashion she received an equivalent economic benefit and was liable for the income tax thereon; that the assets of the estate were insufficient to pay the indebtedness and also to make delivery of the specific legacy to her, and under the law of Florida such indebtedness was required to be paid before a delivery could have been made of specific bequests free of such liability for debts; that since she could not enjoy her full rights as legatee and as credi-

tor, and since by law her creditor's right was preferred over her right as a legatee, she by the waiver, received an economic advantage in securing her legacy without an encumbrance equivalent to the interest released; that she, as creditor, was not only possessed of the better legal, or prior, right, to have the interest paid before she became entitled to receive an unencumbered legacy, but that she was, in effect, paid the interest due her as a creditor by the receipt of the legacy. Furthermore, the Commissioner asserted that even if she did not derive economic benefit in securing a free and unencumbered legacy, then, in such an event, it should be held that she had received such benefit out of the residuum of the estate which would have been largely consumed had she not waived collection of interest. The Commissioner, influenced by these views, made the deficiency assessment on such an asserted receipt of the interest, or its equivalent.

The widow paid the additional assessment and sued, unsuccessfully in the Court below to recover the payment, which she contends was illegal because: (a) She did not receive any income either through the direct, or the indirect, collection of interest; (b) the initial allowance of the claim for interest by the Probate Court, which was never received, created no income tax liability; (c) she had the legal right to relinquish her claim for interest without incurring an income tax liability when in so doing she did not "procure in its place other satisfactions which were of economic worth to her"; (d) the economic worth theory, as applied in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, is not applicable here since she neither received nor diverted the payment, or disposition, of any income, or the right to enjoy the benefit of the economic gain, as was done in the Horst case.

The lower Court found[1]—and apparently it is conceded by counsel—that the statute of limitations had run against the notes in question, but it concluded that although the notes were barred by the statute, it was necesary for the bar of the statute to have been pleaded, and in the absence of such a plea the claim was not unlawfully allowed.

The Court below held that although income is not taxable until received, directly or indirectly, nevertheless the taxpayer here, by securing approval of the Probate Court of her claim and placing herself in a preferred position, and after having procured in its place other satisfactions of economic worth, had lost the right to make an effective waiver of the income-tax-laden interest.

At the onset of this discussion it would seem appropriate and helpful to keep in mind the following applicable postulates: (1) A person sui juris has a right to waive the payment of an indebtedness whether evidenced by a promissory note or by a judgment to which the note had been reduced; (2) not only can such a person waive payment of such a note or judgment, but he likewise may waive any prior right to payment, whether such right is conferred by statute or by contract; (3) a taxpayer has the right to take any legal course that is open to him in order to avoid or to minimize his income taxes; but (4) no course of action for that purpose is within the permission of that principle if it has as its end an escape from the payment of taxes on income which he has received either directly or indirectly.

The payee of the notes here was sui juris and could waive the note, the judgment or any prior legal right to payment without injuriously affecting the right of any third person. She had the privilege of waiving payment as an end to the reduction of her taxes, but she could not waive the interest in form and at the same time collect it in substance and thus avoid the tax consequences on any economic benefit achieved thereby.

The question here, therefore, is not whether the widow has the right to relinquish the receipt of the income from the interest so as to escape taxes, but the question here is what, if anything, did she receive in lieu of the thing waived?

In this connection it is insisted by the Appellee that Appellant, by the waiver of interest, received an economic benefit in the release of the hotel stock freed from the obligation to pay the debt that accrued from the interest, which debt, under the Florida

---

[1] Opinion reported at 71 F.Supp. 675.

law, would first have to be paid before the special legacy would be free of liability for the debt. That contention is true, but it does not take into consideration Sec. 734.05, F.S.A. 1941, F.S.A., setting out the order in which assets of an estate shall be subjected to the payment of debts, and providing as follows:

"If a testator shall make provision by his will, or designate the funds or property to be used, for the payment of debts, estate and inheritance taxes, family allowance, charges and expenses of administration, and legacies, the same shall be paid out of the funds, or from the property or proceeds thereof, as provided or designated by the will so far as sufficient. If no provision be made nor any fund be designated, or if insufficient, the property of the estate shall be used for such purposes and to raise the shares of pretermitted spouse and children, in the following order:

"(1) Property not disposed of by the will.

"(2) Property devised or bequeathed to the residuary legatee or legatees.

"(3) Property not specifically bequeathed or devised.

"(4) Property specifically bequeathed or devised.

"No priority shall exist as between real and personal property."

█ Thus, under this statute, the hotel stock of the widow was not liable for the payment of the debts of the estate until three other types of assets were first exhausted. The record does not reveal that there were any assets of the estate in categories 1 and 3 but it does reveal that a residuum of $57,269.13 was turned over to the trustees at the end of the administration, whereas the interest on the note was only $45,568.96. Even had there been no release of the claim for interest, there would have been in actuality no liability, or occasion, to have recourse against the widow's hotel stock for the payment of the interest. The residuum was more than ample to pay such interest had it been, or continued to be, an indebtedness of the estate. It follows, therefore, that the waiver of the interest gained the widow nothing by way of releasing her stock from liability for the alleged indebtedness. Her stock was, to say the least, only

secondarily liable for any debts so long as the property primarily liable was ample to retire the obligation.

The next question is whether or not she received economic satisfactions by reason of her participation in the residue which would have been practically exhausted had the interest been paid. It will be remembered that the widow was entitled to only three-fourths of the *income,* after expenses, from the residuum, and that the testator's daughter was entitled to the other one-fourth of the income. The present worth of the taxpayer's three-fourths interest in the income from the residue was not found nor attempted to be taxed as income received during the tax year. Moreover, it is not taxable to the widow until earned or received. The corpus of the residuum was not income, and it comes into this case only for a determination as to whether or not the widow in exercising the legal option to waive the payment of the interest thereby secured out of the residuum some sort of an equivalent to the waived interest, which the Commissioner can charge to her as income.

█ On this aspect of the case it is sufficient to say: (1) That what she has received, or will receive, as income from the residuum had not, at the time of the assessment by the Commissioner, nor since, been determined; (2) that if her rights were to be measured, in money, by three-fourths of a residuum, of which she is entitled only to the income, then it must not be overlooked that three-fourths of that residuum, or three-fourths of the *corpus* of the trust estate, was $42,951.84, whereas the debt she relinquished was $45,568.96—a loss of $2,617.12.

Even if the widow took the course of canceling the interest so that the testator's daughter would be able to participate in the income from the residuum, and even if the gratification of this laudable purpose were some sort of "satisfaction" to the taxpayer, it must likewise be remembered that income taxes are not imposed upon generous impulses which have no ascertainable equivalent in money or money's worth.

Admittedly the taxpayer did not receive the interest, but assuming, arguendo, that she received in lieu thereof the right to re-

ceive income from three-fourths of the residuum, or that she procured some sort of a satisfaction when she made use of her power to dispose of the claim for interest so as to permit the testator's daughter to receive the income from one-fourth of the residuum, a relevant and important question will then arise as to whether or not these equivalent benefits, or satisfactions, were received by the taxpayer during the tax year in question, and, if not, then during what year would the tax liability thereon accrue?

Assuming, furthermore, that the rationale of the opinion in Helvering v. Horst, supra, should be so stretched as to hold that the relinquishment gave to the widow the satisfaction of permitting her stepdaughter to receive the income from one-fourth of the residuum, and that the widow should be taxed for the satisfactions thus experienced, must not the tax, of necessity, then be laid only upon the $14,317.28, or the proportion of the residuum thus made available to the stepdaughter's use?

█ Without doubt the legal rights of the estate, the rights and duties of the executors, as well as the legal status of the canceled claim, are governed by the laws of Florida. If, under such law, the claim was illegal, or unenforcible against the estate, then its relinquishment could not have the tax consequences attributable thereto. The executors would be without legal right to pay the claim and the Probate Court without legal authority to approve its payment if the claim showed on its face that it was legally unenforcible.

It appears to be conceded that any right of action on the notes of the widow was barred by the five-year Florida statute of limitations, F.S.A. § 95.11(3), and in such an event payment of the interest could not be satisfied either out of the stock in the special legacy, out of the residuum, or out of any other assets of the estate, unless the obligation was resuscitated by the order of the Probate Court allowing the claim, the effect of which we shall discuss later.

█ It seems that in Florida an executor may not pay a note that was barred by the statute of limitations before the death of the maker without being guilty of a devastavit. In Patterson, et al. v. Cobb, 4 Fla. 481, the point was raised that an executor or administrator by omitting to plead the statute of limitations thereby waived the defense. The Court held that such a failure by the executor to plead the statute would render him guilty of a devastavit to the same extent as the paying of a bond founded on an usurious contract. In that opinion the Supreme Court said:

"Upon what good reason the payment of a debt barred by the lapse of time before the death of the testator, should be excluded from the operation of this rule, we cannot discover. Clearly the right to recover against the executor does not exist, and therefore he is under no obligation to pay— the payment under such circumstances is a palpable misapplication of assets." [2]

Patterson v. Cobb, supra, is an old case, but there seems to be no case or statute in Florida to the contrary.

There is more reason in the present case, where an executor was the creditor, than in the Patterson case why the claim in question should not be paid.

█ In the light of the decision in Patterson v. Cobb, supra, we conclude that the lower Court's holding that the statute of limitations was a defense that must be specially pleaded is not the rule in Florida as to claims against the estates of decedents, even though such is the rule in other types of cases.

The Commissioner and the lower Court were of the opinion that the making of an order by the Probate Court allowing the widow's claim for interest gave the claim some unimpeachable standing, but such a viewpoint seems to overlook the fact that the same Court subsequently made another order approving the release by the widow of any right to collect the claim and expressly modifying and changing its order of August

---

[2] Cf. Sanderson's Adm'rs v. Sanderson, 17 Fla. 820, wherein it is held that an administrator of a solvent estate has a right in Florida to retain a debt due himself that was not barred in the lifetime of the deceased or at the date of the issuing of his letters. We take it that the converse would be true had the debt become barred during the life of the maker, as in the present case.

29, 1940, wherein it had approved her claim.[3]

█ Undoubtedly the Probate Court could modify and change its prior order, at least while the adminstration was still pending, and if an order of the Probate Court is a determining factor in this case, it must be the subsequent order which modified and changed the initial order; in other words, it must be the order as modified and amended on which attention should be focused.

It appears to us, therefore: (a) That the conclusion that the widow received the benefit of the interest relinquished by reason of the freeing of her hotel stock from a liability that first should have been paid is based upon a false premise because the stock was liable only after an ample residuum had been exhausted; (b) that the premise that she received benefit out of her portion of the residuum in excess of that relinquishment is without support and no sustainable conclusion can be predicated thereon; (c) that any conclusion based upon the premise that the order of the Probate Court of August 29, 1940, approving the claim for payment was final and effective must fall because it is undisputed that such order was subsequently amended so as to debar and deprive the widow of the right to collect her claim.

█ Moreover, since the claim of the widow was barred by the statute and, therefore, unenforcible, the waiver of such a claim would impute no consideration for the doing of that which generous impulses dictated, good conscience prescribed, and the law commanded.

The lower Court should have given judgment for the taxpayer. The cause is reversed and remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

SIBLEY, Circuit Judge, concurring:

If Mrs. Potter had had a clear right to the interest at first allowed her by the probate court, and had relinquished the right when faced by heavy income taxes on its collection in order to let the money come to her and her step-daughter by bequest under her husband's will, I fear the cases of Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, and W. D. Haden Co. v. Commissioner, 5 Cir., 165 F.2d 588, decided by us recently, would stand in her way. I concur in the reversal because I think she had no lawful claim to the interest. As the majority opinion states, it seems to be conceded that any claim to it which she might have had was barred at her husband's death, so that under Florida law the claim could not lawfully have been paid by the executors. I go one step further and venture to say, though the question was not presented in the court below, nor argued here, that under Florida law Mrs. Potter could not have a claim against her husband for interest on her money in his hands. As stated in Tresher v. McElroy, 90 Fla. 372, 106 So. 79, the marital relation is in general as at common law but has been modified by (1) Sect. 1 of Art. 11 of the Florida Constitution making all property real and personal of a wife owned by her before marriage or lawfully acquired afterwards by gift, devise, bequest, descent or purchase to be her separate estate, and (2) a statute allowing her to sue (without joining her husband) respecting her real estate, and (3) a statute, Section 5867 of Compiled General Laws of 1927, F.S.A. § 708.03 which was of force in 1930 when the notes in controversy were given, and at Potter's death, which reads: "The property of the wife shall remain in care and management of the husband but he shall not charge for his care and management, nor shall the wife be entitled to sue her husband for the rent,

---

[3] The pertinent part of the last order is as follows:

" * * *and the said Jessie B. Potter is irrevocably barred and deprived of any and all rights, power, privilege, claim or demand to receive, accept, demand or claim any interest upon either of said notes; and

"2. This Court's order of August 29th, 1940, that each, severally, of said notes is a valid and existing obligation and indebtedness of the estate and authorizing and directing the executors to pay the same is hereby modified and changed to remove and omit therefrom any and all interest accrued or to accrue upon each, severally, of the promissory notes mentioned and referred to in the foregoing Release, Relinquishment and Waiver of the said Jessie B. Potter."

hire, issues, proceeds or profits of her said property." If Mrs. Potter could contract at all with her husband about the use of her property by him, I do not think she could charge him contrary to this statute for the hire or profits of her property in his hands, and that this would apply to money, interest being the hire or profits on that sort of property. I do not think the promise to pay interest during her husband's life was enforceable. When she in 1943 abandoned her claim to it, and the probate court expunged that part of her claim, a correct result was reached. She was never entitled to the interest. No taxable income ever accrued in respect of it.