## LADSON LUMBER CO. v. ALLEN, Collector of Internal Revenue.

### Civ. A. 708.

United States District Court,
M. D. Georgia, Macon Division.
May 14, 1951.

Waldo DeLoache, J. O. Gibson, Moultrie, Ga., for plaintiff.

John P. Cowart, U. S. Atty., T. Reese Watkins, Asst. U. S. Atty., Macon, Ga., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Andrew F. Oehmann, Special Assts. to Atty. Gen., for defendant.

DAVIS, Chief Judge.

Plaintiff is a Georgia corporation engaged in the lumber business, and throughout the time here involved, carried on extensive operations in Florida. About 1923 it had some transactions with the Dupont Lumber Company, a Florida corporation. This company, which was owned by W. C. Smith, W. Carlton Smith and J. E. Daniel, failed in 1927. At the time of its failure, the Dupont Company was indebted to the Plaintiff in the sum of approximately $5,500, and the plaintiff received nothing on its debt in the liquidation of the Dupont Company.

Subsequently, by arrangement with the plaintiff, the Smiths and Daniel formed a new corporation, known as Little River Lumber Company, which was also a Florida Corporation. Additional advances were made to the Smiths and Daniel whereby the total obligation amounted to around $18,000, and in 1927 a new obligation in the form of a note and a second mortgage on certain properties of W. C. Smith was given to the

plaintiff. Both the note and the mortgage are Florida contracts, controlled by Florida law. After all payments made were credited to the account, it was reduced to $16,-225.26.

About the year 1934 the properties embraced in the mortgage to the plaintiff were sold under a foreclosure by the holder of the first mortgage, from which the plaintiff received nothing.

In the year 1937, W. C. Smith died in Florida, insolvent. J. E. Ladson, president of the plaintiff corporation, throughout the years during which the debt was in existence kept in touch with his attorneys and with W. C. Smith until his death, and with Carlton Smith and J. E. Daniel. After the death of W. C. Smith, Ladson continued to look to Daniel for payment of the obligation. Daniel's father was wealthy and it was expected that his inheritance would enable him to satisfy this obligation. No further payments were made upon the obligation after about 1930.

About 1941, W. Carlton Smith, who was then insolvent, entered the army. The plaintiff had never, during the existence of the debt, looked to Carlton Smith personally for payment of the obligation. On September 14, 1941, Daniel died in Miami. An administrator was appointed for his estate which was valued at $7,226.11.

The note signed by Little River Lumber Company, in its corporate capacity, was a sealed instrument. Below the corporate signatures there appeared the following: "We endorse and guarantee the prompt payment of this note", and this was signed by W. C. Smith, W. Carlton Smith, and J. E. Daniel. There is no indication of a seal on this endorsement.

The administrator of Daniel's estate published the notice to creditors on September 22, 1941, as required by Florida law. Under such law all claims against the estate, which were not filed within eight months from that date, were forever barred. Florida Statutes Annotated, §§ 733.15 and 733.16. The plaintiff did not learn of Daniel's death until September, 1942, and, therefore, filed no claim, it having already become barred by statute.

The taxpayer, on his income tax return for the year 1942, took a deduction for the bad debt under consideration. The Commissioner of Internal Revenue, upon review, disallowed the deduction, first, upon the ground that the debt was due to J. E. Ladson individually, and not to the plaintiff. This ground was later abandoned, and the Commissioner finally contended that the debt did not actually become worthless in the year 1942. The plaintiff's return for 1942 showed a net loss and on its return for 1943, the plaintiff claimed a net operating loss carry over from 1942 on account of the bad debt deduction. This was disallowed on the same basis as that relied on in the disallowance of the 1942 deduction. The deficiency assessments resulting from these disallowances were paid and the taxpayer filed his claims for refund. This action was commenced more than six months after the filing of the claims for refund and the Commissioner had taken no action thereon.

The case was tried before me without a jury.

█ Under my view of the case, since the endorsement of Daniel and the Smiths is not under seal, under the Florida statute of limitations, Florida Statutes Annotated, § 95.11(3), any personal liability on the obligation was already barred on the date of Daniel's death, September 14, 1941. Under Florida law, the administrator of Daniel could not lawfully pay this barred debt, even if the condition of the estate permitted. Potter v. Fahs, 5 Cir., 167 F.2d 641, 645; Patterson v. Cobb, 4 Fla. 481.

█ If the endorsement had the same effect as a sealed instrument, as contended by the plaintiff, the applicable limitation period of twenty years, Florida Statutes Annotated, § 95.11(1), of course, would not have expired. But, it seems settled under Florida law, that since the endorsement itself bears no seal, it is subject to the Florida statute governing unsealed instruments. Fourth National Bank of Jacksonville v. Wilson, 88 Fla. 48, 101 So. 29.

█ I think the debt became entirely worthless in 1941 upon the death of J. E. Daniel. The probate record discloses that he had a gross estate of more than $7,000,

and, after payment of the claims filed, there was about $2,500 disbursed to his heirs at law.

The evidence establishes that as long as Daniel lived, the debt was not entirely worthless. His death, however, rendered it worthless in view of the Florida law, which prohibits payment by an administrator of a debt barred by the statute of limitations during the life of the deceased. Potter v. Fahs, supra; Patterson v. Cobb, supra.

It is clear to me that the debt did not become worthless in 1942, as contended by the plaintiff. Under the 1942 Amendment to Section 23(k) (1) of the Internal Revenue Code, 26 U.S.C.A. § 23(k) (1), the debt, to be deductible as a loss, must become worthless in the year for which the deduction is claimed.

The plaintiff filed a motion for judgment on the pleadings at the beginning of the trial, which the Court took under advisement, but now denies. The plaintiff also filed its motion for judgment at the conclusion of the evidence, which the Court hereby denies.

The Commissioner, under the facts and the law in this case, as I understand it, did not err in disallowing the deduction, and the Defendant is entitled to a judgment.