**UNITED STATES of America, Appellee,**

v.

**Earl ALLEN, Jr., Appellant.**

**No. 76–1806.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1977.

Decided March 15, 1977.

Garry A. Pearson, Grand Forks, N. D., for appellant.

Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D., for appellee; Harold Bullis, U. S. Atty., Fargo, N. D., on brief.

Before HEANEY and STEPHENSON, Circuit Judges, and STUART,* District Judge.

STUART, District Judge.

Defendant-appellant Earl Allen Jr. appeals his judgment of conviction on two counts of willfully making and subscribing false income tax returns for calendar years

* The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa, sitting by designation.

1969 (count I) and 1970 (count II) in violation of section 7206(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 7206(1).[1] Count I of the indictment alleged that for 1969, Allen's income tax return stated taxable income in the amount of $6,792 whereas he "well knew and believed, his true taxable income * * * was $24,394.45." Count II charged that Allen's 1970 return reported taxable income of $1,554 whereas he "well knew and believed, his true and taxable income * * * was $11,416.76." The district court upon conviction fined Allen $2,000 on each count and taxed the costs of prosecution, $2,541.50, against him. The court further placed Allen on probation for a period of two years.

[1] The government presented its case on a specific item basis. The proof at trial established many items of omitted income for the taxable years in question. Knowing and willful falsification may be inferred from repetitious omissions of items of income. *United States v. Tager*, 479 F.2d 120, 122 (10th Cir. 1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 924, 39 L.Ed.2d 115 (1974). On appeal, Allen argues that three of those items were not reportable income for the years alleged; and thus had any of them not been so considered, the jury may have reached a contrary verdict. Specifically, appellant urges that the trial court erroneously denied his requested jury instructions relating to these three items and refused to strike portions of the government's evidence. No direct challenge to the sufficiency of the evidence supporting the jury's determination of willfullness is being made. We find appellant's contentions without merit and affirm the conviction.

### I.

In 1969, the Minot Amusement Corporation purchased a building in Minot, North Dakota, jointly owned by Allen and his wife, from whom he was later divorced, which had been leased by them to Dakota Theaters, Inc. for use as a movie theater. In closing the transaction, it was agreed by the parties concerned that Minot Amusement, in partial payment for certain personal property being purchased from Dakota Theaters, would remit to the Allens the sum of $10,000 in satisfaction of past due rentals owed by Dakota Theaters. On December 17, 1969, Minot Amusement issued a check in that amount payable to Earl Allen and Ethel Mae Allen and bearing the notation "Paid pursuant to assignment of Dakota Theaters, Inc. dated Nov. 3, 1969." The check was subsequently cashed and, because of a marital dispute between Allen and his wife, the proceeds were converted to a cashier's check, dated December 19, 1969, payable to the order of both Earl and Ethel Mae Allen. This latter check was ultimately given to Mrs. Allen in settlement of a divorce decree and cashed by her in April of 1970.

It is undisputed that the $10,000 item was omitted from the Allens' joint return filed for the year 1969. At trial, Allen testified that his first knowledge of the omission was during the audit giving rise to his indictment and prosecution. It is now urged on appeal that the $10,000 rental payment item was not income in 1969 because it was received subject to substantial restrictions, that is, the existence of a dispute between Allen and his wife concerning the disposition of the money, combined with the necessity of endorsement by both parties thereby limited Allen's access to the funds. Such an argument, however, fails to properly account for the vital fact that Allen and his wife filed a joint return for the 1969 taxable year. It is clear that rental payments constitute income. 26 U.S.C. § 61(a)(5). A joint return under 26 U.S.C. § 6013 is treated as the return of a single taxable unit and a husband and wife elect-

---

1. That section, as applicable, provides:

   Any person who—

   (1) *Declaration under penalties of perjury.*—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;

   * * * * * *

   shall be guilty of a felony * * *.

ing to so file shall report their aggregate income upon which tax is computed. *See Taft v. Helvering*, 311 U.S. 195, 61 S.Ct. 244, 85 L.Ed. 122 (1940). The evidence showed that Allen was a cash basis taxpayer. The rental payment, received in 1969, was clearly includible as gross income on the Allens' joint return for that year. *See* 26 U.S.C. § 451.

■ The existence of a dispute between Allen and his wife, or the fact that the checks were made out to them as copayees does not, as appellant argues, render the rental item excludible for income tax purposes in 1969. By virtue of their joint return, the Allens *together* constituted the taxable unit for that year. While under some circumstances restricted access to, or use of, funds may prevent its taxation as income on the theory it has not yet been received, we think it clear that such restrictions must come from sources external to the particular taxpaying unit itself. *See Kamm's Estate v. C.I.R.*, 349 F.2d 953, 955 (3d Cir. 1965). It is for this reason that *Estate of Margaret McAllen Fairbanks v. Commissioner*, 3 TC 260 (1944), cited by the appellant, is inapposite. In that case, the tax court found certain delayed rental payments received after the decedent's death were not gross income to her estate since the funds had been placed in an account which could only be drawn upon with the joint signatures of the executors and the decedent's husband. The husband had maintained throughout the taxable year involved that the executors were entitled to no part of the funds and refused to consent to the release thereof save for certain tax payments. Therefore, so long as the estate did not enjoy untrammeled use of the money, it was not gross income taxable to it. 3 TC at 268. Here, in contrast, any limitations upon the use of the rental proceeds were self-imposed by the Allens. It is clear neither Minot Amusement Corp. nor Dakota Theaters, Inc. imposed any such restrictions. The Allens could, and did, dispose of the proceeds as they saw fit. Thus, the money was reportable as gross income on their 1969 joint return and the trial court committed no error in refusing appellant's requested instruction.[2]

## II.

The government's evidence at trial further established that Allen omitted from his returns certain real estate commissions earned by him in 1969 and 1970. Among these was a $1,125 commission received in 1970 from the sale of a building owned by Swift and Company, on whose behalf Allen had acted as agent, to Mr. Albert C. Vix. Pursuant to a prearrangement with Vix, Allen repurchased the building from him shortly after the initial sale, applying the commission proceeds as part of the downpayment. Allen testified that he had attempted to buy directly from Swift, but was unable to secure the necessary financing. It is urged that under these circumstances, the appellant essentially sold the building to himself and his commission on the sale from Swift to Vix was therefore not income, but merely a reduction in the price.

Also, in 1969 Allen received a realty commission in the amount of $2004 from the sale of a house to his parents which amount did not appear as gross income on his return for that year. The house had belonged to the Eli Lilly Company for whom Allen acted as agent. Allen testified that he had agreed in advance to sell the house to his parents free of the amount of his commission. Upon receipt of the commission check and pursuant to the agreement, he turned the proceeds over to his parents. Therefore, it is urged, the commission income was waived and not taxable to Allen.

■ Under 26 U.S.C. § 61(a)(1) gross income is defined to include "[c]ompensation for services, including fees, commission, and similar items." Where an individual by

---

2. In this connection, Allen had requested the following instruction:

    Income received by a taxpayer subject to substantial restriction upon its disposition is not taxable income until those restrictions have been removed.

virtue of his trade or profession has earned the right to income or has otherwise exercised dominion and control over its disposition, he is to that extent taxable on it. *Blassie v. C.I.R.*, 394 F.2d 628, 630 (8th Cir. 1968) (citing cases). With respect to the Swift building sale, the taxable event is the sale by Allen, as agent for the seller, to Vix. The evidence showed that Swift knew nothing of Allen's subsequent repurchase, and that this was a separate transaction. Allen was retained by Swift to perform a service and was paid a commission, from the total sale proceeds, unrestricted in its use for doing so. Furthermore, applying the commission toward downpayment on the resale to Allen does not alter its character as income regardless of whether Allen is viewed as purchasing from Vix or as completing a sale to himself. As the tax court stated in *Williams v. Commissioner*, 64 TC 1085 (1975), a case involving this precise issue:

> Petitioner attempts to avoid characterization of the commissions as income by calling them a reduction in price. While it is true that petitioner's out-of-pocket costs are * * * less than that of other purchasers, the purchase price paid by him was exactly the same for him as it was for any other purchaser. Any reduction in petitioner's out-of-pocket costs was the result of the commission paid him by Dart, not a reduction in price. Petitioner's costs were less than those of other purchasers since he had done what none of the other purchasers had done— rendered services to his employer, Dart, for which he was paid his usual commission. Dart did not lower the price of the properties for petitioner, nor did it sell the property to petitioner at a bargain price. It sold the property to him at its normal price, for which petitioner was paid a commission.

*Id.* at 1089. Similarly, there is no evidence here that Swift offered the building to Allen at anything less than its normal asking price. The commission on the Swift sale clearly constituted gross income. *Williams v. Commissioner, supra*; *Commissioner v. Daehler*, 281 F.2d 823 (5th Cir. 1960).

Regarding the sale of the house to Allen's parents, the commission earned thereon is also gross income. The crucial factor again is Allen's unrestricted dominion over the commission proceeds and his right to divert them to whatever use he deemed appropriate. Appellant cites *Commissioner v. Giannini*, 129 F.2d 638 (9th Cir. 1942), for the proposition that waived income is not subject to tax; however, the taxpayer there did not receive money, nor did he direct its disposition.

> All that he did was to unqualifiedly refuse to accept any further compensation for his services with the suggestion that the money be used for some worthwhile purpose. So far as the taxpayer was concerned, the corporation could have kept the money.

*Commissioner v. Giannini, supra*, 129 F.2d at 641. That is plainly not the situation here. As agent for the seller Eli Lilly Company, Allen sold his parents a house and earned a commission which was paid from the proceeds received by Eli Lilly on the sale. Eli Lilly imposed no restrictions on the disposition of Allen's commission, nor was it aware of any prior agreement by him regarding its ultimate use. Allen not only accepted and cashed the check, but obviously directed its disposition by delivering the proceeds to his parents. Under such circumstances, Allen is regarded as making a gift, or anticipatory assignment, of income to his parents and the amount thereof is taxable to him. *See Helvering v. Horst*, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940); *Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930); *Greer v. United States*, 408 F.2d 631 (6th Cir. 1969).

We conclude that both contested commission items were gross income to the appellant in the year they were received. The instruction classifying them as such was correct, and the trial court properly refused his requested instructions.[3] The facts and

---

**3.** With respect to the Swift transaction, Allen had requested the following instruction:

> In the administration of the tax laws, the substance of a transaction is controlling over

circumstances surrounding Allen's receipt of these items were unusual enough to support his argument concerning the willfulness of their omission from his tax returns, but the jury apparently believed he willfully omitted a substantial portion of his income. The sufficiency of the evidence to support that verdict is not challenged.

### III.

Finally, appellant argues that he was not informed prior to trial that the government intended to establish an omitted $1129.42 gain on a 1969 house sale; thus, the trial court erred in failing to strike the government's evidence relating thereto. The record, however demonstrates that no information was intentionally withheld or concealed, and further that this item was indeed included in the general information the government supplied to the appellant pursuant to a pretrial order. We perceive no reversible error.

The conviction is affirmed.

the form it may take. Thus, where a buyer of property engages another to take title, the cost of the property to him is his cost, and if prior to the sale he is under a binding contract to purchase the property from the first buyer, any compensation he receives for selling the property, such as a brokerage commission, is not income to him, but reduces his cost of the sale.

The following instruction had been requested regarding the sale of the house to Allen's parents:

Similarly, where a real estate broker has, prior to making a sale, agreed with the buyer that he will waive his commission, or, if paid, pay it to the buyer, he does not receive income on the sale.