**TILBROOK v. FORRESTAL et al.**
Civil Action No. 30772.

District Court of the United States for the
District of Columbia.
April 3, 1946.

George Eric Rosden and John Lewis Smith, both of Washington, D. C., for plaintiff.

John F. Sonnett, Asst. Atty. Gen., and Edward M. Curran, U. S. Atty., and John P. Frank, Walker W. Lowry, and A. Morris Kobrick, Attys., Department of Justice, all of Washington, D. C., for defendants.

Before WILBUR K. MILLER and PRETTYMAN, Associate Justices, United States Court of Appeals, District of Columbia, and LETTS, Associate Justice, District Court of the United States for the District of Columbia, sitting as a statutory three-judge court.

WILBUR K. MILLER, Associate Justice.

Gilmore Lee Tilbrook earned substantial sums in 1942 by rendering professional services as an engineer and engineering

representative to Morton Manufacturing Company and Atlas Imperial Diesel Engine Company. His services aided those companies in performing war contracts with the Navy Department of the United States.

Claiming to act under the authority of the Renegotiation Act of 1942 (Act of April 28, 1942, ch. 247, Title IV § 403, 56 Stat. 245, as amended Oct. 21, 1942, 56 Stat. 982, 50 U.S.C.A.Appendix § 1191), an authorized representative of the Navy[1] unilaterally determined on June 29, 1945, that the plaintiff had realized in 1942 excessive profits of $25,000. A copy of the order so determining was sent to Tilbrook. On September 13, 1945, the Navy informed the plaintiff that after allowance of the tax credit provided for by § 3806 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 3806, the net amount due to the United States under the determination of June 29, 1945, was $18,123.68. Payment of the net sum within ten days was demanded, failing which the Navy warned Tilbrook that recourse would be had to the methods provided by law for enforcing collection. This letter of demand did not specify which of the several methods of coercing payment authorized by the Act[2] would be employed.

In these circumstances the plaintiff filed this suit on September 22, 1945, within the period of ten days given for payment, against James V. Forrestal, Secretary of the Navy, Artemus L. Gates, Undersecretary of the Navy, and W. L. Hudson, Chief of Services and Sales Renegotiation Section of the Navy Department, in which he sought

"(A) to restrain the defendants and each one of them from renegotiating the plaintiff under the Renegotiation Act for his business of the year of 1942 on the grounds that said Act is repugnant to the Constitution of the United States.

"(B) to restrain the defendants from enforcing or further proceeding under a decision entered by said defendants under said Renegotiation Act on June 29, 1945, as hereinafter fully set forth, whereby defendants have determined unilaterally that the plaintiff has derived excessive profits of $25,000 from his profession during the year of 1942.

"(C) to compel the defendants to withdraw the unilateral determination referred to under Section 11, hereinafter, and restrain them from entering any such or similar orders for the purpose of recovering what is alleged to be excess profit from operations during the year 1942.

"(D) a declaratory judgment that the plaintiff is not subject to renegotiation for his fiscal year ending December 31, 1942."

On October 9, 1945, the plaintiff filed a motion that a three-judge court be constituted and convened pursuant to Title 28, § 380a, U.S.C.A., 50 Stat. 752, and on the same day entered a motion for

"A temporary restraining order restraining the defendants from issuing withholding orders to any of the principals of plaintiff for the purpose of collection under the unilateral determination of June 29, 1945, or if such withholding orders have been issued already, to enjoin the defendants and each of them, their agents, serv-

---

[1] As the Act then stood, the Secretary of each department was authorized to renegotiate contract prices to eliminate excessive profits. The War Contracts Price Adjustment Board was created by a later enactment.

[2] Section 403(c) of the Renegotiation Act is as follows:

"(2) Upon renegotiation, the Secretary is authorized and directed to eliminate any excessive profits under such contract or subcontract (i) by reductions in the contract price of the contract or subcontract, or by other revision in its terms; or (ii) by withholding, from amounts otherwise due to the contractor or subcontractor, any amount of such excessive profits; or (iii) by directing a contractor to withhold for the account of the United States, from amounts otherwise due to the subcontractor, any amount of such excessive profits under the subcontract; or (iv) by recovery from the contractor or subcontractor, through repayment, credit or suit, of any amount of such excessive profits actually paid to him; or (v) by any combination of these methods, as the Secretary deems desirable. The Secretary may bring actions on behalf of the United States in the appropriate courts of the United States to recover from such contractor or subcontractor, any amount of such excessive profits actually paid to him and not withheld or eliminated by some other method under this subsection. The surety under a contract or subcontract shall not be liable for the repayment of any excessive profits thereon. All money recovered by way of repayment or suit under this subsection shall be covered into the Treasury as miscellaneous receipts."

ants, employees or any other persons acting under their authority from accepting or receiving any payments under such withholding order."

Oral argument on this motion was heard by Mr. Justice Letts on October 17, 1945, at the conclusion of which the court indicated its intention to grant the motion pending a hearing by the three-judge court on the plaintiff's motion for a temporary injunction. Thereupon defendants' counsel agreed with the court and opposing counsel that withholding orders would not be issued prior to the hearing concerning the motion for a preliminary injunction, and in consequence a formal restraining order was not entered.

At this, or perhaps at a later, conference between Mr. Justice Letts and counsel for both sides, it was announced by counsel for the defendants in this case that the Secretary of the Navy intended to request the Attorney General to file an action at law against Tilbrook to recover the sum of $18,123.68 claimed to be due to the United States under the determination of June 29, 1945. On November 7, 1945, the United States filed an action at law against Tilbrook in the District Court of the United States for the Western District of Pennsylvania, in which judgment was sought for the sum of $18,123.68, the net amount, after the tax credit, determined by the order of June 29, 1945, to be due.

■ Later it was made to appear in the present action, not only by affidavits filed in the record but also by the unequivocal assurances of counsel for the defendants, both in briefs and in oral argument, with full authority from the Secretary, that the Navy Department intends to rely solely and exclusively upon the action at law at Pittsburgh to recover the sum claimed from Tilbrook for 1942, and that no withholding order will be issued. We accept these assurances as an administrative commitment binding upon the Navy Department in the future concerning efforts to collect from Tilbrook the alleged excessive profits of 1942.[3] This being true, the irreparable injury which Tilbrook feared he would suffer if withholding orders were issued to his principals cannot occur, and the controversy set forth in the complaint as amended becomes moot. In view of the removal of the threat of issuing withholding orders, the allegations of the plaintiff cannot serve as a basis for considering the constitutional and other questions presented.[4]

■ Moreover, the action at law pending at Pittsburgh, being a proceeding in which the United States itself is a party, affords to Tilbrook an opportunity to urge the unconstitutionality of the Renegotiation Act, to argue that the Act does not apply to him because he had no privity of contract with the Navy Department, and to present any and all defenses he may have. This he may do in that action, free of the jurisdictional difficulties which beset him here because the United States is not a party to this suit, and in the Renegotiation Act did not consent to be sued. By voluntarily entering the Pittsburgh forum, the United States opened wide to Tilbrook the gate of litigation. The plaintiff concedes in his brief the elementary proposition that generally there is no room for the exercise of equity jurisdiction, where there is a clear, full and adequate remedy at law, which bars resort to equity. Consequently, under the established principle and by the plaintiff's own admission, there is no equity jurisdiction here because of the filing and pendency of the action at law in the District Court at Pittsburgh which affords him a full opportunity to present all his defenses against the sovereign itself.

■ But the plaintiff maintains that the Pittsburgh action was filed in violation of the agreement made by counsel in the conference with Mr. Justice Letts to which we have referred. He also urges that the suit at Pittsburgh was filed in defiance of this court, as the purpose of this suit not only was to enjoin the defendants from issuing withholding orders but also to enjoin them from taking any steps to enforce collection; and that, although no temporary restraining order actually had been entered by the court, it is the duty of defendants in an injunction suit to maintain the status quo ante pending judicial determination of the issues. Accordingly the plaintiff entered a motion that the court command the Secretary of the Navy to withdraw and cancel his instruction to the Attorney General to institute suit against the plaintiff in Pittsburgh, or to instruct the Attorney General to dismiss that action without prejudice.

[3] American Tel. & Tel. Co. v. United States, 299 U.S. 232, 241, 57 S.Ct. 170, 81 L.Ed. 142.

[4] Mine Safety Appliances Company v. James V. Forrestal, 326 U.S. —, 66 S. Ct. 219.

We are not convinced that filing the action at Pittsburgh violated the agreement made by counsel, since the whole controversy seems to have been revolving around the issuance of withholding orders, and since counsel for the defendants announced in conference with the presiding justice and opposing counsel that the Secretary of the Navy proposed to file such a suit. It is apparent that the overall purpose of the suit before us was to prevent the issuance of withholding orders and the resultant embarrassment to the plaintiff should he thereby be forced to sue his clients in order to test the constitutionality of the statute; and to obtain for the plaintiff the right to present and argue all his defenses, including particularly the plea of unconstitutionality. This opportunity to assert his rights was given in the fullest measure to the plaintiff when the United States filed its action at law against him. It seems to us that the plaintiff was not thereby prejudiced, but rather was granted the full freedom of defending himself which he is trying to obtain in this action. The result is that in complaining about the filing of the Pittsburgh suit, the plaintiff is in the anomalous position of protesting against having the chance to litigate all possible questions in an action at law between the United States and himself, and preferring to exhaust his remedies in a court of equity in a proceeding to which the United States, his real opponent, is not a party.

It is true, as the plaintiff contends, that the factual situation has changed materially since September 22, 1945, when he filed his complaint, but as injunctive relief necessarily must operate in futuro, in an action for such relief equity speaks as of the date of its decree.[5] We are confronted now with a situation in which the plaintiff seeks to enjoin the issuance of withholding orders which are not threatened, and in which the plaintiff seeks equitable relief concerning matters about which he has a full, clear and adequate remedy at law. In such circumstances, we deem it unnecessary to discuss the interesting collateral questions which have been ably briefed and argued by counsel for both sides. It seems clear to us that the defendants' motion to dismiss should be granted, and it is so ordered.

[5] Duplex Printing Press Co. v. Deering, 254 U.S. 443, 464, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; Texas Co. v. Brown,

258 U.S. 466, 474, 42 S.Ct. 375, 66 L.Ed. 721.