Donald D. BREWER, Director, Department
of Public Welfare, District of
Columbia, Appellant,

v.

Marie SIMMONS and Henry Simmons, Jr..
Appellees.

No. 3569.

District of Columbia Court of Appeals.

Argued Nov. 9, 1964.

Decided Dec. 2, 1964.

John R. Hess, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellant.

Marie S. Klooz, Washington, D. C., for appellee Marie Simmons.

Winfred R. Mundle, Washington, D. C., for appellee Henry Simmons, Jr.

David Carliner and William Beasley Harris, Washington, D. C., with leave of court filed a brief for the National Capital Area Civil Liberties Union as amicus curiae, urging affirmance.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge:

This appeal followed issuance of an order in the Domestic Relations Branch permanently enjoining the Department of Public Welfare of the District of Columbia, and all subordinates and agents acting for said Department, from discontinuing welfare payments to a wife and minor children.

Without waiving other bases of error, the fundamental contention of the Department of Public Welfare, through its Director, is that the Domestic Relations Branch lacks primary or general equity power to issue an injunction interfering with the administration of the public welfare laws of the District of Columbia. The husband and wife, on the other hand, joining in support of the injunctive relief granted *sua sponte* by the trial judge, argue that the order is within the statutory powers vested in the Domestic Relations Branch, in the exercise of its delegated authority, whether in law or in equity, as is necessary to effectuate the purposes of its creative act, including exclusive jurisdiction over support and property rights of minor children. They also argue that the proposed action by the Department was against the public policy of this jurisdiction and that the minor children here involved would suffer irreparable injury if the welfare payments contributed for their support were terminated.

We first consider the steps taken to date in the pending litigation. The cause of action initiated by the wife, without prepayment of costs, sought maintenance for herself and support for nine minor children ranging in age from two years to eighteen years. She complained that the husband, although earning about $106 a week, plus overtime, had failed and refused to adequately support his family, which was not separated at that time but lived together in the same marital abode. No answer was filed by the husband and, upon entry of default and after a hearing, an order was entered February 15, 1962, finding that he had failed and refused to adequately support his family and, although he was temporarily unemployed due to a recent leg injury, the court directed him to pay from the check he was receiving from his local union under a member's disability plan $34.00 per week as temporary support for the family.

It appears that as of November 7, 1963, he was delinquent in the amount of $1,778.-00 and on that date an order was issued finding him in contempt of the order of support and committing him to jail for 120 days or until such earlier time as he should purge himself by paying the arrearages. Execution of the commitment was stayed as long as he paid regularly the $34.00 per week originally awarded plus $16.00 per week to discharge the accumulated arrearages. The order further provided that he report to the United States Marshal for confinement to jail for five weekends and for release therefrom Mondays through Fridays.

On May 13, 1964, the wife filed a motion to modify the order of February 15, 1962, by setting specific times for visitation by the husband to the marital abode and requesting that he be ordered "not to molest her and the children by coming to the house at any other time, day or night." The reasons for this request as given by the wife at the hearing on the motion were set forth in the Opinion and Order of the court dated May 28, 1964.

"* * * She also states she receives Aid for Dependent Children from the Department of Public Welfare and without this assistance she could not maintain her family. Plaintiff in effect is asking this Court, however, to restrain the defendant from visiting with her or with his children, except during certain brief specified periods. The reason for this request is her apprehension that she will be deprived of the assistance being furnished by the Department of Public Welfare, by virtue of the policies set forth in the 'Handbook of Policies of the Department of Public Welfare.' Plaintiff also states she does not want the defendant around the home or to associate with her or the children while he is under the influence of alcohol."

The court then concluded:

"It is obvious from the evidence of record that the children herein could not be supported without the aid from the Department of Public Welfare. It also seems clear that this aid ought not to be forthcoming only at the price of disassociation of the family. Any such policy of the Department of Public Welfare which would deprive the children of that support because of visits from their father would be against public policy."

In addition to prohibiting the husband from the use of any intoxicants immediately before and during visits to his family and from physically molesting them, but overruling the request for limiting the times for visitation, the court sua sponte ordered the Department of Public Welfare to show cause why it should not be enjoined from "in any way interfering with the dependency status of the [wife] and her children, or depriving the [wife] and her children of Welfare benefits, solely because of the visits of the [husband], or his presence in the home." The court also ordered that the Department be temporarily restrained from taking any action which would interfere with the dependency status of the wife and children.

On behalf of the Department of Public Welfare, its Director filed an answer challenging the jurisdiction of the court to entertain the matter, asserting that the wife's apprehension that she might be deprived of assistance being furnished her was without foundation and that adequate administrative remedies were available which must be exhausted before she may resort to judicial review. The Director moved to vacate the temporary restraining order and to quash the Rule to Show Cause on the same grounds. He also asserted he was and could not be a proper party to the proceedings and that administrative action by him in performing his duties as delegated by the Commissioners of the District of Columbia is not subject to regulation, review or interference by the Domestic Relations Branch of the District of Columbia Court of General Sessions.

At a hearing on the motion, the wife testified she wanted the husband's visits restricted because she had been told by investigators from the Department of Public Welfare that she would lose her Welfare contributions if it was determined the husband visited too frequently, which apprehension was borne out by the provisions of the "Handbook of the Department of Public Welfare." In opposition, the husband argued he wanted to visit his family as often as possible because he loved his wife and children. Based on this testimony the trial judge concluded that the wife "was

imminently threatened with irreparable injury, should she and the husband exercise their natural rights to associate as part of a family unit"; that it was the opinion of the court that "any regulation or requirement directed to such an end would be against the public policy"; and that "as *parens patriae* of the 9 minor children in this action [the] Court has a duty to determine all matters which bear upon the interest of such minors." The trial court thereupon on June 12, 1964, issued a permanent injunction prohibiting the Department of Public Welfare "from discontinuing Welfare payments to the [wife] solely on the basis of the continued visitation of the [husband] with his wife and family, or the frequency of such visitation." From this final order an appeal was taken by the Department of Public Welfare.

We are convinced that the Domestic Relations Branch of the District of Columbia Court of General Sessions possesses no unlimited general or ancillary equity powers, as claimed by the trial judge, authorizing the issuance of an injunction against the Department of Public Welfare in any wise affecting any grant or threatened discontinuance of welfare payments. This is true even though minor children may be adversely affected, either directly or indirectly, by administrative action of the welfare agency.

■ As an incident to its exclusive but limited civil jurisdiction, D.C.Code 1961 § 11–901 et seq. (Supp. III), the District of Columbia Court of General Sessions has been granted such equitable powers as may be necessary to fully and completely exercise its jurisdiction, but such powers are incidental and limited and not primary or general. Villacres v. Haddad, D.C.Mun. App., 184 A.2d 634, 635 (1962); Paton v. District of Columbia, D.C.Mun.App., 180 A.2d 844, 846 (1962); Friedman v. District of Columbia, D.C.Mun.App., 155 A.2d 521, 522 (1959). By its separate creative stat-

ute, the Domestic Relations Branch has exclusive jurisdiction over adoption, support, custody and property rights of minor children and possesses *all legal and equitable powers necessary to effectuate these purposes.*[1] In that respect, it has been held that the Branch "has the general equitable power which the District Court formerly had in dealing with such problems to give such relief as it finds is required under the circumstances." David v. Blumenthal, 110 U.S.App.D.C. 272, 275, 292 F.2d 765, 768 (1961). One of the primary purposes of the Branch is to provide for the support of minor children by the person or persons responsible under the law to care for them, especially the father and/or the mother. It was not contemplated that this power should be extended to the actions and duties of a local governmental agency dealing with the distribution of welfare money provided by a separate statute passed by the Congress merely because this agency also deals with support and care of dependent minor children. The general equity power that is vested in the Domestic Relations Branch is unmistakably applicable only to effectively carry out the purposes of its creative statute and does not encompass any supervisory control or restraint over the actions and funds of a local welfare agency operating under a separate statute.

■ The District of Columbia Public Assistance Act of 1962, D.C.Code 1961 § 3–201 et seq. (Supp. III), covers a number of aid categories, one being "Aid to Dependent Children." The District Commissioners are authorized to administer the award of public assistance. This was accomplished by delegating to the Department of Public Welfare the necessary functions to carry out the purposes of the Act and by adopting and promulgating such rules as were "necessary or desirable to carry out the provisions" of the Act. All public assistance grants are periodically reconsidered and the amounts may be changed or entirely withdrawn, if made er-

---

1. D.C.Code 1961 §§ 11–1141; 11–1161 (Supp. III).

roneously or the recipient's circumstances are sufficiently changed to warrant such action. § 3–214 provides that an applicant for or a recipient of public assistance "aggrieved by the action or inaction of the Commissioners" shall be entitled to a hearing conducted in accordance with prescribed rules. The findings of the Commissioners on any appeal shall be final. If judicial review is available after a final decision by the Commissioners in compliance with statutory authority, we are satisfied that it does not lie with the District of Columbia Court of General Sessions or any branch thereof.[2]

The present case, as we have pointed out, started as an action for maintenance and support of minor children filed by a wife against her husband. When the latter failed to make the payments as originally directed by the court and was molesting his wife and children by his frequent appearances at the family home under the influence of alcohol, the wife moved to have him adjudged in contempt of the court's order and to have his visits fixed for certain times and only when he had not been drinking. The question of public funds or public assistance was never involved. The trial court clearly had no authority sua sponte or otherwise to bring in the Department of Public Welfare for any purposes,

and certainly not to effectuate any purpose of the statute creating the Branch.

Accordingly, we rule that the trial judge in the Domestic Relations Branch was wholly without jurisdiction, by statute or by inherent general or ancillary equity powers, to make the Department of Public Welfare, or any of its subordinates, officers, agents or employees, a party to the present cause of action in that Branch between appellees, husband and wife, or to issue an injunction, temporary or permanent, which prohibits or interferes in any way with the statutory authority of the Department of Public Welfare from taking any appropriate action in respect to an existing public assistance grant to the wife in aid of nine dependent minor children in her care.

Having determined that the Branch lacked jurisdiction to issue the injunction, we do not find it necessary to reach or consider any other alleged errors committed by the trial judge in the same proceedings.

The order granting injunctive relief must be set aside as void and of no force and effect and the Rule to Show Cause issued against the Department of Public Welfare in this case must be dismissed, with prejudice.

It is so ordered.

2. The only reference to the District of Columbia Court of General Sessions in the statute is the provision giving the Commissioners, on behalf of the District of Columbia, authority to sue any husband, wife, father, mother, or adult child in the Domestic Relations Branch of that court for repayment of any public assistance granted them under the Act as such persons are able to pay in their capacity as the persons responsible primarily for support of the aid recipient.