**Paula Grace Phillips LEFTWICH, Appellant,**

v.

**Willie L. LEFTWICH, Appellee.**

**No. 80–372.**

District of Columbia Court of Appeals.

Argued Nov. 18, 1980.

Decided Feb. 5, 1982.

**140**

Nelson M. Oneglia, College Park, Md., for appellant.

Peter R. Sherman, Washington, D. C., for appellee.

Before KERN,* HARRIS, and FERREN, Associate Judges.

HARRIS, Associate Judge:

The parties to this appeal were granted a divorce on the ground of separation for more than one year without cohabitation. The trial court denied the wife's (appellant's) claim for alimony, awarded her $5,000 in attorneys' fees, and ordered a distribution of the marital property conditioned upon the wife's signing joint federal income tax returns for two years during which she was married to her husband (appellee). The wife contends that the trial court abused its discretion principally in four areas: (1) in adopting verbatim the proposed findings of fact and conclusions of law which had been drafted by counsel for the husband; (2) in denying her claim for alimony; (3) in distributing the marital property; and (4) in conditioning her right to her share of the marital property upon her signing two joint federal income tax returns.[1] We affirm the trial court's order

---

* Associate Judge KERN did not participate in the decision of this case.

1. Appellant's other contentions concerning the court's order are without merit. We deny her

insofar as it denies alimony to the wife and awards her $5,000 from the husband toward her attorneys' fees.[2] We reverse the order insofar as it distributes the marital property and conditions the wife's award upon her filing joint federal income tax returns with her husband and remand the case for further proceedings.

## I

The parties to this appeal were married in 1967. They separated in 1978. There are no children of the marriage. The husband is an attorney engaged in the practice of law; the wife is a school teacher employed in the public school system of the District of Columbia. The trial court awarded both parties a divorce on the ground that they had lived separate from each other for one year.

The trial court received proposed findings of fact and conclusions of law from both parties and adopted those submitted by counsel for the husband. Those findings were, among others, that the wife's position was tenured, that she was entitled to a pension upon retirement,[3] that her income was about $22,200 annually, that she could increase her annual income by teaching or otherwise working during the summer months, that she was 36 years of age and in good health, and that she had been self-supporting by virtue of her income from the time of the separation. The court concluded from these findings that she had no need for alimony and denied her claim for it.[4]

The trial court apportioned the property acquired by the parties during their marriage as follows: (1) the wife received one of their automobiles and the husband re-

ceived the other three; (2) the marital home, which was valued at about $150,000 with no mortgage outstanding, was ordered to be sold and the proceeds divided equally after a $17,000 tax liability had been satisfied; (3) the wife received all the furniture, crystal, silverware, and furnishings in the marital home (with the exception of several items which the husband had owned prior to the marriage or had received as a gift during the marriage), and her jewelry and furs; (4) the parties' credit union savings account was divided equally between them; (5) each party's separately titled cash accounts were awarded to the respective owner; (6) the husband received a house, its furniture and 15 acres of land located in Culpeper, Virginia;[5] and (7) the trial court awarded the husband the interests in five separate partnerships of an investment or tax-benefit nature as well as various securities in his name which he had acquired prior to the marriage. Additionally, the husband was ordered to contribute $5,000 toward the payment of the wife's attorneys' fees.[6]

The trial court expressly conditioned the wife's receipt of her share of the marital property upon her filing an amended joint federal income tax return with her husband for the years 1978 and 1979. Such condition rested upon the court's finding that if the wife did not sign joint returns for those two years, the husband's additional tax liability would be about $40,000.

## II

■ The wife contends that the trial court abused its discretion in adopting, as its own, the findings of fact and conclusions of law drafted by counsel for the husband.

---

request for attorneys' fees in conjunction with this appeal.

**2.** We previously summarily affirmed the granting of the divorce on motion of the husband. (Aug. 14, 1980, Order.)

**3.** The trial court made no finding as to the value of the wife's pension rights, but did make a finding that the value of the husband's "individual retirement account" was approximately $41,700.

**4.** The trial court deemed the husband's ability to pay alimony "irrelevant."

**5.** In addition, the court found that the husband had received a tract of undeveloped realty in Orange County, Virginia, as a gift from his grandmother and, accordingly, assigned him ownership of that land.

**6.** Although the order in the record reflects a $2,000 award, the parties appear to agree on appeal that the award was in fact in the amount of $5,000.

The trial court had requested that counsel for both parties prepare and submit proposed findings and conclusions, and the court then signed the husband's submission. While we have rejected objections to this practice in previous cases, we have held that a stricter standard of review is appropriate when the court adopts verbatim one party's proposed findings. *Owen v. Owen,* D.C.App., 427 A.2d 933, 937 n.2 (1981); *District Concrete Co. v. Bernstein Concrete Corp.,* D.C.App., 418 A.2d 1030, 1035 (1980); *Turpin v. Turpin,* D.C.App., 403 A.2d 1144, 1148 (1979); *Sullivan v. Malarkey,* D.C.App., 392 A.2d 1057, 1061 (1978). Accordingly, we have made a careful review of the record in order to determine if the findings of fact and conclusions of law represent the trial judge's own determinations rather than the advocacy of the prevailing party.

## III

■■ The wife contends that the trial court abused its discretion in denying her claim for alimony. The award of alimony is a matter committed to the sound discretion of the trial court, and its determination will not be disturbed on appeal absent a clear abuse of discretion. *Brice v. Brice,* D.C.App., 411 A.2d 340, 344 (1980); *Moore v. Moore,* D.C.App., 391 A.2d 762, 770 (1978); *Finch v. Finch,* D.C.App., 378 A.2d 1092, 1093 (1977). There are no fixed rules for determining if and in what amount alimony should be awarded. A general guideline is that alimony is intended to provide "reasonable and necessary" support to the recipient. *McEachnie v. McEachnie,* D.C.App., 216 A.2d 169, 170 (1966).

■ The record reflects that the trial court considered various factors in assessing the wife's need for alimony. Given the wife's demonstrated ability to earn income, her tenure at her present job, her good health and relative youth, the duration of the marriage, and the absence of any children, we are unable to say on the basis of the record before us that the trial court abused its discretion in refusing to award her alimony.[7]

## IV

■ The wife also maintains that the trial court abused its discretion in apportioning the property acquired by the parties during the marriage. The trial court is accorded broad discretion in adjusting property rights of the parties incident to a divorce. *Benvenuto v. Benvenuto,* D.C.App., 389 A.2d 795, 797 (1978). The relevant statute provides that the court shall

distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution

---

7. The husband's income and ability to pay alimony apparently were not considered by the trial court as there is no mention of either of those factors in the findings of fact. Although there are no fixed guidelines in determining if alimony should be awarded, the husband's income is a factor to be considered and the trial court erred in not making a finding with respect thereto. In *McEachnie v. McEachnie, supra,* we held that "their [the parties'] respective financial positions, both past and prospec-

tive" are primary factors to be considered in awarding permanent alimony. 216 A.2d at 170. We have held that it is essential when setting the amount of alimony or child support payments first to ascertain the net income of both parties. *See Brice v. Brice, supra,* 411 A.2d at 344; *Grasty v. Grasty,* D.C.App., 302 A.2d 218, 220 (1973); *Mumma v. Mumma,* D.C.App., 280 A.2d 73, 76 (1971). While no finding was made as to the husband's net income, the record reflects that it substantially exceeds the wife's.

as a homemaker or to the family unit. [D.C.Code 1981, § 16–910(b).]

The requirement, then, is that the trial court consider all relevant factors and arrive at an "equitable, just and reasonable" division of the marital assets. The trial court expressly focused on just the husband's financial contributions to the acquisition of the marital property, without regard to any contributions by the wife or the fact that she was markedly less able to acquire assets given the parties' respective earning capacities.[8] Moreover, although the statute requires the trial court to consider "whether the distribution [of property] is in lieu of or in addition to maintenance," the trial court made no mention when apportioning the marital property of the need to balance the fact that the wife was not awarded alimony. Because of the disproportionate award of the parties' property and the trial court's apparent failure to consider so many of the relevant factors set forth in the statute, we reverse the portion of the trial court's order distributing the marital property. On remand, the trial court will be able to set forth with more precision the factors it deems relevant in making its distribution.

## V

Finally, appellant contends that the trial court abused its discretion by conditioning her receipt of her court-designated share of the marital property upon her signing two joint federal income tax returns.[9] The trial court's order provided

> that the Wife's receipt of the Shephard Street house sales proceeds, the Mercedes Benz, one-half of the Transportation Federal Credit Union account, and the contribution toward her legal fees be and they hereby are, expressly conditioned on the wife's cooperation in filing an amended 1978 joint federal tax return and timely

filing a joint 1979 federal income tax return; it being understood that the Husband shall pay all additional taxes due on such returns.

While the order is couched in conditional terms, it is tantamount to a directive to the wife to sign the joint returns. Her failure to do so would preclude her from receiving any substantial interest in the marital estate. We find this portion of the order, being unquestionably coercive, to be erroneous as it exceeds both the mandate of the Internal Revenue Code provisions governing joint returns and the bounds of the trial court's equitable powers. Accordingly, we also reverse that segment of the order.

The Family Division of Superior Court has exclusive jurisdiction over property determinations following a divorce. D.C.Code 1981, § 11–1101(8); *id.*, § 16–910. The court operates with jurisdictional powers "to adjudicate any civil action at law or in equity." *Andrade v. Jackson*, D.C.App., 401 A.2d 990, 992 (1979); Super.Ct.Dom. Rel.R. 1. The trial court possesses general equitable powers to adjudicate property rights between spouses. *Hemily v. Hemily*, D.C.App., 403 A.2d 1139, 1141 (1979); *Travis v. Benson*, D.C.App., 360 A.2d 506, 508 (1976); *Lyons v. Lyons*, D.C.App., 295 A.2d 903, 904 (1972). While the trial court enjoys broad discretion in distributing marital property, *Travis v. Benson, supra*, at 510, its equitable powers are "unmistakably applicable only to effectively carry out the purposes of its creative statute." *Brewer v. Simmons*, D.C.App., 205 A.2d 60, 63 (1964) (referring to predecessor statute, D.C.Code 1961, §§ 11–1141, 11–1161 (Supp. III)).

Under its governing statute, the trial court is to consider "all relevant factors" when distributing the property accumulated during the marriage "in a manner that is equitable, just and reasonable." D.C.Code 1981, § 16–910(b). In the instant case, the

---

8. We have noted previously that financial contribution is not the sole criterion to be considered in establishing entitlement to marital property. *Benvenuto v. Benvenuto, supra*, 389 A.2d at 798.

9. In 1978, the husband filed a joint return without the wife's signature. The wife filed a separate return for 1978 and fully paid her tax obligation. At the time of trial, tax returns for 1979 had not been filed; the wife had refused to sign a 1979 joint return with her husband.

trial court reflected upon each spouse's income tax liabilities as well as upon the tax consequences of its order. We find no error in the court's having evaluated the relative tax positions of the parties. Tax obligations are an omnipresent concern, "their collection inevitable." *Jones v. Commissioner,* 327 F.2d 98, 101 (4th Cir. 1964). Many state courts have indicated that tax liabilities are an appropriate and a relevant factor for consideration in dividing property upon divorce. *See Broida v. Broida,* 388 S.W.2d 617, 621 (Ky.1965) (court should consider income tax consequences in determining value of marital estate available for division); *Damsey v. Damsey,* 39 Misc.2d 385, 386, 240 N.Y.S.2d 671, 673 (Sup.Ct. Kings Co. 1963), *aff'd mem.,* 20 A.D.2d 969, 251 N.Y.S.2d 420 (1964) (fact that divorced husband derives tax advantage from filing joint return with another woman is factor to be considered in setting amount of divorced wife's support); *Benedict v. Benedict,* 542 S.W.2d 692, 698 (Tex.Civ.App.1976) (tax liability of parties is element to be factored into disposition of marital property); *Cole v. Cole,* 532 S.W.2d 102, 105 (Tex. Civ.App.1975) (trial court's refusal to consider tax consequences of its divorce decree held an abuse of discretion); Annot., 51 A.L.R.3d 461, 468–71 (1973). *But cf. Aaron v. Aaron,* Minn., 281 N.W.2d 150, 153 (1979) (although within trial court's discretion to consider tax consequences of award, no abuse of discretion for trial court to refuse to speculate about potential tax consequences of future sale of marital real estate).

 The propriety of considering tax matters in divorce proceedings, however, does not serve as a license for the trial court to compel a party to execute a joint return. The trial court is not at liberty to alter basic precepts of federal or of state tax law. The Internal Revenue Code speaks in terms of an election for joint income tax returns made by husbands and wives. "A husband and wife may make a single return jointly of income taxes." I.R.C. § 6013(a). An individual and his spouse may be "entitled to make a joint return under section 6013." *Id.,* § 6012(a)(1)(A)(iii). This language has been interpreted that "as a general rule married couples may file a joint return." *Bertucci v. United States,* 146 F.Supp. 949, 950 (Ct.Cl.1957) (referring to predecessor section, Int.Rev.Code of 1939, § 51(b)(1)).

A joint income tax return under § 6013 is treated as the return of a single individual, that is, a single taxable unit. *Taft v. Helvering (Commissioner),* 311 U.S. 195, 198, 61 S.Ct. 244, 246, 85 L.Ed. 122 (1940); *United States v. Allen,* 551 F.2d 208, 210–11 (8th Cir. 1977). Because of this treatment, parties electing to file a joint return may realize substantial tax savings.[10] *See Parker v. United States,* 524 F.2d 479, 481 (5th Cir. 1975) ("Appellants [husband and wife] seek the tax advantages customarily flowing from the filing of joint returns."); *Estate of Upshaw v. Commissioner,* 416 F.2d 737, 742 (7th Cir. 1969), *cert. denied,* 397 U.S. 962, 90 S.Ct. 993, 25 L.Ed.2d 254 (1970) ("the appellants [husband and wife] took advantage of all the benefits incident to a joint return."). However, the opportunity to benefit from filing a joint return in no way transforms the election provision of § 6013 into a commandment that all married couples shall execute joint returns. A married individual possesses complete discretion to file a separate return, or, with the concurrence of his or her spouse, a joint return. "Each spouse has a free choice to decide whether or not to file a joint return." *Heim v. Commissioner,* 251 F.2d 44, 47 (8th Cir. 1958). That choice requires no justification.[11] *Id.,* at 47. ("[W]e do not

---

10. The record reflects that the additional federal income tax obligation of the husband for 1978 will be approximately $21,000 if the wife does not sign a joint return for that year. If the wife does not file a joint return with the husband for 1979, the additional tax liability of the husband will be approximately $20,000.

11. We note that the wife bases her refusal to sign the joint returns on her potential liability for tax assessments. She indicated that her wages were garnished in 1977 and a tax lien was placed on the family house due to the husband's failure to pay a $10,000 deficiency relating to their 1977 joint return. According to the record, that $10,000 liability remains

mean to say that a spouse must assign a valid reason for refusing to join in a return.")

To sanction the trial court's effectively ordering a spouse to cooperate in filing a joint return would nullify the right of election conferred upon married taxpayers by the Internal Revenue Code. Such a right is not inconsequential; its exercise affects potential criminal and/or civil liabilities of taxpayers.[12] *See* I.R.C. §§ 7206(1), (2), 7207. Married individuals filing a joint return expose themselves to joint and several liability for any fraudulent or erroneous aspect of the return.[13] *Parker v. United States, supra*, 524 F.2d at 481 ("under 26 U.S.C. § 6013 liability is joint and several."). Moreover, a wife has been held "liable on a joint income tax return even though she had not signed it." *Jones v. Commissioner, supra*, 327 F.2d at 101, citing *Kann v. Commissioner*, 210 F.2d 247 (3d Cir. 1953), *cert. denied*, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109 (1954); *accord, Heim v. Commissioner, supra*. Given the wife's substantial interest in the choice of a filing status, with its concomitant consequences, we find that it was error for the trial court to impose a coercive construction of § 6013 on appellant.

 Even if we believed that the trial judge was at liberty to alter basic concepts of the federal taxation laws, our own conception of equity jurisdiction would require us to reverse the portion of the order instructing the wife to cooperate in filing joint returns. The merger of law and equity in our courts does not erode the venerable principle that an adequate remedy at law provides a preferable substitute to coercive equitable relief. *See Saffron v. Department of the Navy*, 183 U.S.App.D.C. 45, 50 n.40, 561 F.2d 938, 943 n.40 (1977), *cert. denied*, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978) ("equitable relief may be granted only when the remedy at law is inadequate."); *Blair v. Page Aircraft Maintenance, Inc.*, 467 F.2d 815, 819 (5th Cir. 1972) ("Since the only relief requested was the recovery of money, equitable relief will not lie."); *Matthews v. Handley*, 179 F.Supp. 470, 471 (N.D.Ind.), *aff'd mem.*, 361 U.S. 127, 80 S.Ct. 256, 4 L.Ed.2d 180 (1959) ("Courts of Equity will not act in such a circumstance as here when adequate legal remedies exist."); *Tilbrook v. Forrestal*, 65 F.Supp. 1, 3 (D.D.C.1946) ("a clear, full and adequate remedy at law ... bars resort to equity."); *Multiplex Concrete Machinery Co. v. Saxer*, 310 Mich. 243, 258, 17 N.W.2d 169, 174 (1945) ("Equity will afford relief, where the legal remedy would be inadequate or not immediately available.") (citation omitted). That maxim should have prompted the trial court to explore alternative forms of relief and to choose the least intrusive option.[14] While we agree that "[t]here is no need for, and every reason to avoid, making the taxing authorities beneficiaries of the litigation," *Broida v. Broida,*

---

unpaid in addition to $7,000 due from a prior existing tax lien. The husband, on the other hand, characterizes appellant's stand as "spiteful vindictiveness."

12. We note that one court apparently has found no abuse of discretion in a trial court's requiring the parties in a divorce proceeding to file separate federal income tax returns for the year in which they were divorced. *Trevino v. Trevino*, 555 S.W.2d 792, 800–01 (Tex.Civ.App. 1977). Even though the court there effectively denied the parties their right of election regarding filing status, we find that situation different from the present one. A directive to the spouses to file separate returns does not present the concerns of joint liability attendant to the filing of joint returns.

13. In certain situations, a spouse participating in a joint return may be relieved of liability.

*See* I.R.C. § 6013(e). The legislative history of that section suggests that "it was designed to bring government tax collection practices into accord with basic principles of equity and fairness." *United States v. Dioguardi*, 350 F.Supp. 1177, 1179 (E.D.N.Y.1972), citing 1970 U.S. Code Cong. & Ad.News at p. 6089.

14. Given the coercive nature of the court's order, we note that "[t]he function of equity is not to punish but merely to take such action as the Court in its discretion deems necessary to prevent the recurrence of improper conduct." *Stern v. Lucy Webb Hayes National Training School for Deaconesses and Missionaries*, 381 F.Supp. 1003, 1018 (D.D.C.1974). We find no evidence that the wife's course of action was improper.

*supra,* 388 S.W.2d at 621, the trial court well could have remedied any perceived tax disadvantage to the husband by altering the disposition of the marital property.[15] Of course, the trial court may inquire whether the wife will, or will not, sign a joint return with the husband, and give consideration to that information in determining the court's award. However, by effectively ordering the wife to join in filing joint returns, and without apparent regard to any equally effective alternative legal disposition, the trial court opted for equitable relief likely to stifle the wife's nascent efforts to manage her own fiscal affairs. The path pursued by the trial court accordingly was erroneous. We reverse and remand the case for further proceedings consistent with this opinion.[16]

*Reversed and remanded.*

FERREN, Associate Judge, concurring:

I join in Judge HARRIS' opinion for the court but write separately to clarify that, although the wife must have free choice as to whether she "will, or will not, sign a joint tax return with the husband," *ante* at 146, the court is entitled to rely on her decision in making its award; and if she were to choose to sign a joint return but later changed her mind, the husband would be entitled to seek modification of the award.

**15.** Both parties rely on *Brown v. Brown,* D.C. App., 260 A.2d 675 (1970), to support their respective positions. In that case, the wife was awarded alimony, support, and custody of the couple's two children. The husband's aunt had established a trust fund for the support of the children. The trial court conditioned the wife's award of custody upon her use of that trust fund to support the children. The wife appealed, contending that it was error to require use of the trust fund's assets when the husband was able independently to support the children. After looking at the purposes behind the trust's creation and noting the continuing jurisdiction of the court to ensure that the best interests of the children were being considered, we affirmed the conditional custody award.

We find *Brown* inapposite. Here, we are not faced with a custody determination, nor are we asked to decide from which source a certain sum of money should come. The presence and fulfillment of the condition in *Brown* did not

generate the same kind of risks associated with participation in a joint income tax return.

**16.** When this appeal was filed, the trial court became divested of jurisdiction of the case. *See, e.g., Morfessis v. Hollywood Credit Clothing Co.,* D.C.Mun.App., 163 A.2d 825, 827 (1960). Nonetheless, on November 6, 1980, the trial court entered an order which found the wife in contempt and purported to withdraw virtually everything which had been awarded to her. That order was appealed in No. 80–1314. *By separate order, we summarily reverse* the trial court's entry of that order. The wife also sought to have the trial judge recuse himself. Her motion to that effect was denied on June 25, 1981; that denial was appealed in No. 81–745. Although by separate order we deny the motion for summary reversal in that appeal, considering the totality of the circumstances we direct that further proceedings in this case be conducted by another trial judge.