200 N.J. Super. 372 (1985)
491 A.2d 757
MARTHA P. WADLOW, PLAINTIFF-APPELLANT,
v.
JOHN E. WADLOW, DEFENDANT-RESPONDENT, CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1985.
Decided April 4, 1985.
*374 Before Judges PETRELLA and BAIME.
M. Karen Thompson argued the cause for appellant (Norris, McLaughlin & Marcus, attorneys; M. Karen Thompson, on the brief).
*375 George W. Johnson argued the cause for respondent (Johnson & Johnson, attorneys; George W. Johnson, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Plaintiff appeals from the financial aspects of a judgment of divorce entered by the Superior Court, Chancery Division. In her appeal, plaintiff contends that the trial judge abused his discretion by mechanistically dividing the marital assets equally. She further claims that the court mistakenly refused to exempt $20,000 in premarital assets. Lastly, she argues that the trial judge erred when he denied her application to compel defendant to cooperate in filing joint income tax returns. Defendant cross-appeals. He claims that the trial judge erroneously excluded from the marital assets subject to distribution the increase in value of a securities account which had been gifted to plaintiff by her family. The principal thrust of defendant's argument is that the enhanced value of the account was partially attributable to his efforts. Defendant also contends that the trial judge's division of the value of the marital residence constituted an abuse of discretion. He further asserts that the court improperly denied him a share of the accretion of value of this property between the date of the filing of the complaint and the time of the proposed distribution. Defendant's final contention is that the trial judge incorrectly reduced the value of his share of the residence by allowing a credit for a hypothetical real estate commission and legal fees.
The essential facts are not in dispute and need not be recounted at length. The parties were married in 1971 and separated approximately ten years later. No children were born during the marriage. Throughout the entire period of the marriage, plaintiff was employed and earned a substantial salary. Defendant worked as a surveyor until 1980 when he resigned his position to pursue a career as a financial planner. *376 Apparently, defendant was not successful and subsequently suffered from some undisclosed emotional illness. At the time of trial, however, defendant's health had improved significantly and his earning ability was characterized as excellent. During the marriage, plaintiff was exclusively responsible for housekeeping chores. On the other hand, defendant managed the finances and made investment decisions.
It is undisputed that plaintiff had acquired approximately $20,000 through savings, gifts and inheritances prior to the marriage. Although this amount was commingled over the years, defendant candidly acknowledged that it was the result of his wife's efforts and that it would be returned to her family. In recognition of this understanding, defendant executed a will which provided that in the event of a common disaster or simultaneous death the $20,000 would be paid to plaintiff's brother prior to distribution of the residuary estate.
It is also undisputed that plaintiff's parents maintained a securities account (the CJL Security Account) for her benefit during the marriage. Plaintiff's father managed the account. Although substantial profits were earned, nothing was ever withdrawn from the account. Nevertheless, both parties shared in paying the taxes emanating out of these earnings.
Following a plenary hearing, the trial judge granted a judgment of divorce. In a bench opinion, the court determined that the $20,000 in savings, gifts and inheritances which predated the marriage was, nonetheless, part of the marital estate available for distribution. In that regard, the trial judge found that the money had been commingled during the parties' cohabitation and had been used to make joint purchases. However, he also concluded that the CJL Security Account constituted a gift solely to plaintiff and was, thus, immune from distribution. So too, he determined that the enhanced value of the account was attributable to the efforts of plaintiff's father and was not subject to allocation. The trial judge carefully considered the factors and criteria set forth in Painter v. Painter, 65 N.J. 196, *377 211-212 (1974) and decided to divide the parties' personal property equally. Different considerations were said to apply to the marital residence which was allocated on an uneven basis, 55% to plaintiff and 45% to defendant. The court decided that the date of the filing of the complaint was to be used in determining the value of the residence and that the outstanding mortgage and legal fees and a hypothetical brokerage commission were to be deducted.

I
Initially, we reject plaintiff's claim that the trial judge abused his discretion in deciding to allocate the parties' personal property on an equal basis. At the outset, we emphasize the narrow contours of appellate review pertaining to the division of marital assets. It can fairly be said that articulation of the standards and criteria which are to be taken into account in determining an equitable distribution of property is generally a task considerably less formidable than applying them. "[W]e rely heavily, as we must, on the discretion of the trial judge in making these delicate and difficult judgments." Gibbons v. Gibbons, 174 N.J. Super. 107, 114 (App.Div. 1980), rev'd on other grounds 86 N.J. 515 (1981). Thus, the ultimate question before us is whether the trial judge mistakenly exercised his broad authority by equally dividing the parties' personal property. Ibid. See also Borodinsky v. Borodinsky, 162 N.J. Super. 437, 444 (App.Div. 1978); Esposito v. Esposito, 158 N.J. Super. 285, 291 (App.Div. 1978); Salmon v. Salmon, 88 N.J. Super. 291, 310 (App.Div. 1965). Of course, we recognize that a trial judge "does not fulfill his heavy judgmental obligation by routinely or mechanistically dividing the marital assets equally." Gibbons v. Gibbons, supra, 174 N.J. Super. at 114. See also Stout v. Stout, 155 N.J. Super. 196, 205 (App.Div. 1977); Gemignani v. Gemignani, 146 N.J. Super. 278, 282 (App.Div. 1977). That approach was specifically rejected by our Supreme Court in Rothman v. Rothman, 65 N.J. 219, 232, n. 6 (1974). As we noted in Stout v. Stout, supra 155 N.J. Super. at 205, "[t]he *378 word `equitable' itself implies the weighing of the many considerations and circumstances that are presented in each case." This much conceded, the simple reality is that often an equal allocation of property is compelled by virtue of the relative contributions of the parties to the marriage.
Here, we are entirely satisfied that the trial judge conscientiously applied the standards set forth in Painter v. Painter, supra. His findings in that regard are clearly grounded in the evidence contained in the record. Although plaintiff's employment generated slightly greater income during the marriage, we cannot say that this factor, when considered within the context of the complete factual milieu, compelled an uneven distribution of marital assets. So too, the fact that plaintiff was responsible for household chores, while plainly deserving recognition and consideration, did not mandate that she be allocated the greater portion of the marital assets. The trial judge cannot be faulted for counter-balancing against that factor the defendant's contribution in the form of financial and investment management. Finally, the defendant's "fault" in leaving the marital home "is not an appropriate criterion for consideration in effecting an equitable distribution of marital assets." Painter v. Painter, supra, 65 N.J. at 212. See also Chalmers v. Chalmers, 65 N.J. 186, 193 (1974). In our view, the trial judge did not abuse his discretion. We perceive no valid basis to disturb his findings and conclusions in that regard.

II
Equally unpersuasive is plaintiff's claim that the trial judge erred when he refused to compel defendant to cooperate in filing joint income tax returns. Plaintiff's reliance on our decision in Weinkrantz v. Weinkrantz, 129 N.J. Super. 28 (App. Div. 1974) is clearly misplaced. There, we held that the parties "were not legally separated under a decree of separate maintenance within the intendment of § 6013(d)(2) of the Internal *379 Revenue Code of 1954, and that they could therefore file a joint income tax return...." Id. at 33-34. We had no occasion to consider the precise question raised by plaintiff in this appeal; i.e., whether the court is vested with the authority to compel the filing of such a return.
We need not address that question here. We merely note in passing that the problem has not received uniform treatment in other jurisdictions. See, e.g., Wolk v. Wolk, 191 Conn. 328, 464 A.2d 780 (Sup.Ct. 1983); Leftwich v. Leftwich, 442 A.2d 139 (D.C.App. 1982); In re Marriage of Butler, 346 N.W.2d 45 (Iowa Ct. App. 1984); Frasse v. Frasse, 315 N.W.2d 271 (N.D.Sup.Ct. 1982). Assuming that the Chancery Division had the authority to order the parties to file a joint return, we discern no sound basis compelling that course within the context of the facts of this case. Under the Internal Revenue Code (26 U.S.C.A. § 6013(a)) a husband and wife may file "a single return jointly of income taxes." A joint return treats the married couple as a single taxable unit. Taft v. Helvering, 311 U.S. 195, 198, 61 S.Ct. 244, 246, 85 L.Ed. 122, 124 (1940); United States v. Allen, 551 F.2d 208, 210-211 (8 Cir.1977). Although such an election may result in substantial tax savings, see Parker v. United States, 524 F.2d 479, 481 (5 Cir.1975), and Estate of Upshaw v. Commissioner of Internal Revenue, 416 F.2d 737, 742 (7 Cir.1969), cert. den. 397 U.S. 962, 90 S.Ct. 993, 25 L.Ed.2d 254 (1970), the right cannot fairly be said to be inconsequential. Its exercise may have potential civil or even criminal ramifications. We note that "[m]arried individuals filing a joint return expose themselves to joint and several liability for any fraudulent or erroneous aspect" of the contents. Leftwich v. Leftwich, supra at 145. A spouse may be held liable on a joint return even though he or she never signed it. Kann v. Commissioner of Internal Revenue, 210 F.2d 247 (3 Cir.1953), cert. den. 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109 (1954). Although an indemnification agreement may serve to resolve many of these problems, we can well understand the trial judge's reluctance to order the parties to file a joint return. Given defendant's substantial *380 interest in the choice of a filing status and the corresponding consequences, we find that it was not error for the court to deny plaintiff's application.
What has been said thus far does not mean that the trial judge was obliged to ignore the tax ramifications of his decisions. To the contrary, when determining an equitable division of property the court is free to consider the financial consequences of one party's refusal to file a joint return and grant an appropriate credit. See Leftwich v. Leftwich, supra at 146; In re Marriage of Butler, supra at 47. In light of the potential problems to which we have alluded, that would appear to be the far wiser course in this case.

III
In our view, the trial judge erred when he failed to exclude from the marital estate $20,000 in the form of savings, gifts and inheritances acquired by plaintiff prior to the marriage. Although these funds were commingled during the parties' cohabitation, we perceive a clearly manifested and unequivocal intent that they belonged to plaintiff and would ultimately be returned to her or her family. We are thoroughly convinced from our careful review of the record that the trial court's findings in that regard are not supported by the evidence presented. Rothman v. Rothman, supra, 65 N.J. at 233; Borodinsky v. Borodinsky, supra 162 N.J. Super. at 444; Perkins v. Perkins, 159 N.J. Super. 243, 247 (App.Div. 1978). See also Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974); Mayflower Securities v. Bur. of Securities, 64 N.J. 85, 92-93 (1973); State v. Johnson, 42 N.J. 146, 161-162 (1964).
As noted, the exact fate of the $20,000 could not be traced by the parties. Nevertheless, the record evinces a clear intention to return that sum to plaintiff or her family. As defendant candidly acknowledged, the parties "always had the feeling that [the money] had come from her family and as a result of her *381 efforts before marriage and eventually would be returned." By defendant's own testimony, it was clear that the money, although not segregated, was not intended as a gift. See, e.g., Pascarella v. Pascarella, 165 N.J. Super. 558, 564 (App.Div. 1979); Perkins v. Perkins, supra 159 N.J. Super. at 246; Olen v. Melia, 141 N.J. Super. 111, 113 (App.Div. 1976), certif. den. 71 N.J. 518 (1976); Scherzer v. Scherzer, 136 N.J. Super. 397, 401 (App.Div. 1975), certif. den. 69 N.J. 391 (1976); Canova v. Canova, 146 N.J. Super. 58, 62 (Ch.Div. 1976). It was for this reason that defendant executed a will providing for return of the funds to plaintiff's brother in the event of a common disaster.
Under the circumstances, we are satisfied that the trial judge's conclusion was clearly erroneous and "so plainly unwarranted that the interests of justice demand intervention and correction." State v. Johnson, supra, 42 N.J. at 162. We note in that regard that the court's decision was not premised upon its assessment of the parties respective credibility or its "feel" of the case. Id. at 161. Rather, the question presented is essentially one of law. We, thus, conclude that the premarital gifts and savings of plaintiff should not have been considered part of the estate available for equitable distribution.

IV
We next turn to the arguments advanced by defendant in his cross-appeal. Defendant's contention that the CJL Security Account was subject to equitable distribution does not require extended discussion. The record clearly supports the trial judge's finding that the account was established by plaintiff's parents and managed solely by her father. It was segregated throughout the marriage and clearly was never intended to benefit the defendant. The value of plaintiff's interest in the account was, thus, immune from distribution. Cf. Painter v. Painter, supra 65 N.J. at 214.
We are further convinced that defendant was not entitled to a share in any increase in value occurring during the *382 course of the marriage. Suffice it to say, there is not a scintilla of evidence to support the thesis that the enhanced value was in any way attributable to defendant's efforts. Id. at 214, n. 4. See also Mol v. Mol, 147 N.J. Super. 5, 8-9 (App.Div. 1977); Scherzer v. Scherzer, supra 136 N.J. at 401. The fact that defendant might have contributed to the payment of taxes with respect to profits emanating from the account is largely inconsequential. The trial judge characterized such payments as "negligible." The record is generally uninformative in that regard. We are satisfied that defendant was not entitled to any share in the increased value of the account.

V
Equally devoid of merit is defendant's contention that the trial judge's division of the value of the marital residence constituted an abuse of discretion. As noted previously, our role as we see it is to "determine whether the result could reasonably have been reached by the trial judge on the evidence, or whether it is clearly unfair or unjustly distorted by a misconception of law or findings of fact that are contrary to the evidence." Perkins v. Perkins, supra 159 N.J. Super. at 247. Clearly, "[m]ore than a feeling of dissatisfaction is needed to fuel an appeal." Id. at 248. "A sharp departure from reasonableness must be demonstrated before our intercession can be expected." Ibid. Applying these principles here, we find that the trial judge did not abuse his discretion. We cannot say that he was wrong.

VI
Nevertheless, we harbor serious reservations with respect to other aspects of the trial court's decision pertaining to the division of the value of the marital home. At the outset, we note certain ambiguities in the court's disposition of this issue. The trial judge did not order that the property be sold. Nor did he direct that one party's interest be transferred to the other. *383 Rather, he merely found that the property had a market value of $135,000 at the time of the filing of the complaint, and that plaintiff was entitled to 55% of that amount following deduction of the outstanding mortgage balance and allowance of credits consisting of legal fees and a hypothetical brokerage commission.
We assume that the trial court contemplated plaintiff's purchase of defendant's interest in the premises. Our assumption is predicated upon the fact that plaintiff continued to reside in the home following defendant's departure and paid all carrying charges and incidental expenses. Further, defense counsel in his summation offered to sell defendant's interest to the plaintiff.
Based upon that assumption, we hold that the trial court erred in two respects. First, we find unwarranted that portion of the court's judgment which directs that a hypothetical brokerage commission be deducted from the parties' equity in the marital residence. We recognize that such a deduction was apparently permitted in Daly v. Daly, 179 N.J. Super. 344, 351 (App.Div. 1981). However, the specific issue presented here was neither raised by the parties nor considered by us in that case. In point of fact, no published decision in New Jersey addresses that precise question. The decisions of other jurisdictions appear to be equally divided. Compare In re Marriage of Stratton, 46 Cal. App.3d 173, 119 Cal. Rptr. 924, 925 (Ct.App. 1975); Rossum v. Rossum, 482 P.2d 410, 412-413 (Nev.Ct.App. 1971) with In re Marriage of Denney, 115 Cal. App.3d 543, 171 Cal. Rptr. 440, 444 (Ct.App. 1981); In re Marriage of Drivon, 28 Cal. App.3d 896, 105 Cal. Rptr. 124, 125 (Ct.App. 1972).
In our view, the better position is that a hypothetical brokerage commission should not be charged in the absence of evidence that the property will be sold to a third person. We find nothing in the record to support the hypothesis that a real estate commission constitutes a reasonably foreseeable expense incident to the present and future disposition of the property. *384 Clearly, plaintiff's acquisition from defendant, as apparently envisioned by the trial judge, involves no commission.[1] The record is barren of anything which would indicate that she intends to sell the property in the future or, if she does sell, she will sustain a real estate commission as an expense of the sale. The record supports the inference that plaintiff will be able to purchase defendant's interest in the property from funds available to her. Thus, to assume such an expense is pure conjecture. We discern no reason why defendant should be charged with the speculative cost of a speculative sale to a third party. We, thus, conclude that the trial judge erred in that regard.
We also conclude that the trial court failed to account for the accretion in the value of the property between the date of the filing of the complaint and the time of the distribution order. In Bednar v. Bednar, 193 N.J. Super. 330, 332 (App.Div. 1984), we held that there was no iron-clad rule for determining the date of valuation of marital assets. We noted, however, that "use of a consistent date is preferrable, such as the filing of the complaint." Ibid. See also Smith v. Smith, 72 N.J. 350, 361-362 (1977). We also stated that "[t]he question of enhancement or accretion in value pending distribution is separate." Bednar v. Bednar, supra 193 N.J. Super. at 333. With respect to that question, we distinguished between an increase in value caused by market factors or inflation and an enhancement which is the result of the "personal industry of the party controlling the asset." Ibid. We held that "[i]nterim accretions pending actual distribution due to the diligence and industry of a party in possession of an asset, independent of identifiable market forces," should accrue to that person alone. However, where the enhanced value is attributable to market factors or inflation, "each party should share equitably in the increment." Ibid.
*385 Against that backdrop, we are convinced that the trial judge should have considered the appraisal value of the property at the time of the hearing. It is undisputed that the value had increased significantly from the date of the filing of the complaint. This increase was caused solely by market factors, and not by virtue of plaintiff's efforts. The trial judge so found. We, thus, hold that the trial court should have considered the value of the marital residence at the time of the proposed transfer of defendant's interest.

VI
Since our decision vitally affects the allocation of the marital assets, the matter must be remanded for further consideration. The judgment of the Chancery Division is affirmed in part and reversed in part. The matter is remanded for further proceedings consistent with this decision. We do not retain jurisdiction.
NOTES
[1] In contrast, we note that legal fees will be incurred as a result of the transfer of one spouse's interest in the home to the other. Any expenses so incurred may properly be deducted.